In the Matter of the Estate of WILLIAM C. ALTMANN, Deceased.

Surrogate's Court, Orange County, October 10, 1933.

*Chernin & Gold* [*Bernard H. Chernin* and *J. H. Weidner* of counsel], for the claimant.

*Philip A. Rorty*, for the executrix.

TAYLOR, S. Claimant and decedent were married in 1901 and two children were born to them, Alice K., May 6, 1906, and William C., Jr., June 22, 1909. Apparently differences arose between them, and the claimant (now Mrs. Hock) left the decedent in 1918, going to Guthrie, Okla., in 1918, and remaining there until 1923. In 1920, claimant, in the District Court of Logan county, Okla., obtained a final decree of divorce from the decedent, who was served by publication and who did not personally appear in the action. Thereafter Mrs. Hock returned east with the children and in a habeas corpus proceeding instituted by decedent for the custody of the children they were awarded to claimant. Of course, no provision respecting any payments by decedent to this claimant for the care and maintenance of the children was made in those proceedings. (See *People ex rel. Klee* v. *Klee*, 202 App. Div. 592.) After the Oklahoma divorce decree the claimant married one Frank C. Hock and that marriage, so far as the proof indicates, still exists. In August of 1924 the decedent obtained a decree of divorce from the claimant in this State because of the marriage of claimant to Hock and the non-recognition of the Oklahoma divorce decree by the courts of this State.

The final decree in the New York divorce case made in August, 1924, after reciting, among other things, that the court had taken proof with respect to the custody of the minor children and having decided that the defendant therein (this claimant) was entitled to the custody of the children, awarded the custody of the two children to this claimant, with the privilege to the plaintiff therein of having the children during the summer school vacation.

Ever since the separation of these two parties the claimant has supported and maintained the two children. Both have had the advantage of college educations and are now taking their places in the world.

The claim as presented to the estate, and rejected, with respect to the moneys expended for the support and education of William C. Altmann, Jr., commences August 1, 1923, and continues down to June 30, 1929, and amounts in all to $6,315. With respect to moneys claimed to have been expended for the support and education of Alice K. Altmann, the verified claim commences with September 1, 1923, and continues to July 1, 1927, and totals $5,973. On the trial it was recognized that the Statute of Limitations precluded much of these claims and part was withdrawn.

Counsel have submitted rather exhaustive and interesting briefs, much of that on the part of claimant's counsel representing a thorough study and analysis of the cases which hold, in substance, that there is a natural and moral obligation on the part of the father to support his children, and that obligation cannot be done away with. With that conclusion there can be no cavil, but the controversy here is not between the children, or a stranger to them, and the father, but between the mother and the father. This distinction is clearly brought out in *White* v. *White* (154 App. Div. 250), which, after reciting the holding that the father had so far sacrificed his parental rights as to be no longer entitled to the general right to support and maintain his child, stated: " But it in no manner relieved him from the obligation which the parent owes to the State to support his own lawful issue, however loosely or inadequately that obligation may be defined. (*Salomon* v. *Salomon*, 101 App. Div. 588, 590.) Nor could the omission of a provision in the judgment to maintain the child of the marriage operate to estop the *State* from subsequently compelling the defendant to discharge this obligation, either directly or by means of an amendment of the judgment in the original action upon proper notice," and that the judgment " does not abrogate their [the children's] right to support from the father, at least not when the mother is no longer able to afford such support " (p. 251).

Legal obstacles to the allowance of this claim by this court, a forum different from that in which these parties heretofore presented their matrimonial differences, appear to be that (1) the judgment in the divorce action is *res adjudicata* as to the questions here presented; (2) the claimant has mistaken the court to which to apply for relief, and (3) the fact that the claim was presented for the first time after decedent's death established the fact that there was not only no intention on Altmann's part to pay for the maintenance and education of the children, but that there was no intention on the mother's part to ask reimbursement of him.

The New York divorce decree was silent with respect to alimony and support of the children. These two items are not only incidents, but part and parcel, indeed quite a bit of the substance, of divorce actions. (See Civ. Prac. Act, §§ 1155, 1169, 1170.) It is the general rule that " a judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." (*Case* v. *Hardenbrook*, 238 App. Div. 169, 170, 171.) Upon the same subject might also be cited:

*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.* (250 N. Y. 304); *Burritt* v. *Burritt* (29 Barb. 124); *Rich* v. *Rich* (88 Hun, 566); *Kamp* v. *Kamp* (59 N. Y. 212).

Other practical reasons present themselves in support of this conclusion, particularly in separation and divorce actions. It is very generally known, and, in fact, numerous reported cases so indicate (for instance, *Kunker* v. *Kunker,* 230 App. Div. 641), that parties previously agree in writing, or have an oral understanding, with respect to custody of the children, alimony, and support and maintenance of the children. It is significant to note that here the custody of the children was awarded the claimant against whom the New York divorce was obtained, for as a rule custody of children of divorced parents will be given to the innocent party. (*Lester* v. *Lester,* 178 App. Div. 205; affd., 222 N. Y. 546.) There may have been an understanding between these parties that the mother might have the custody of the children in consideration, limited, however, as between the immediate parties, that she should support them. As the father's lips are closed, his estate is deprived of that defense, if such were the fact. The claimant is a school teacher and has demonstrated her ability to maintain and educate her two children by the very fact that she did so. If the claimant had pursued the remedy which, in my judgment, was her only remedy, the court having jurisdiction could have passed upon any question which may have been raised as to agreements or understandings between the parties regarding the maintenance and education of the children, have taken proof of the father's station in life and of the nature of the maintenance and education to which the children were entitled and have made proper directions in the premises.

The jurisdiction of New York courts in divorce actions is purely statutory. (*Patton* v. *Patton,* 67 Misc. 404, 406; *Koehl* v. *Koehl,* 92 id. 579, 581; *Rice* v. *Andrews,* 127 id. 826, 827; *Livingston* v. *Livingston,* 173 N. Y. 377, 380; *Walker* v. *Walker,* 155 id. 77, 80.)

Section 1170 of the Civil Practice Act, in effect at the time of the New York divorce in 1924, provided that not only in the final judgment, but before that time, the court might make such directions as justice required for the custody, care, education and maintenance of the children, and, where the action was brought by the wife, for her support. Due perhaps to the decision in *Salomon* v. *Salomon* (101 App. Div. 588), this section of the Civil Practice Act (then Code Civ. Proc. § 1771) was amended in 1908 to confer jurisdiction at any time after final judgment to annul, vary or modify the directions with respect to custody, etc., of the children, or in case no such directions had been made, to amend

the decree by inserting such directions as justice required. This claimant's remedy then, under this statute, was to apply to the Supreme Court for insertion of such directions in the final judgment for the maintenance of the children as she conceived justice to require. Support and maintenance of children as between divorced parents being vested in the Supreme Court by statute, and such jurisdiction being confined within the limits of the statutory provisions, modification of a divorce judgment must be made by the court expressly given jurisdiction in such matters. As between claimant and the decedent, the allowance of this claim by this court would be tantamount to amending the divorce decree by inserting directions for the education and maintenance of the children, and, moreover, that judgment cannot be amended even by the court which would otherwise have jurisdiction so to do after the death of one of the parties. (*Rice* v. *Andrews,* 127 Misc. 826.)

Modification or correction of or additions to judgments should be made in the particular action or proceeding only by the court which assumed and exercised jurisdiction initially, or, in proper instances, by appeal. (*People ex rel. Cassidy* v. *Lawes,* 112 Misc. 257; affd., 193 App. Div. 931; affd., 230 N. Y. 553; *People ex rel. Dean* v. *Markell,* 72 Misc. 427; *People ex rel. Brunner* v. *Swasey,* 167 App. Div. 935; *People ex rel. Weick* v. *Warden,* 117 id. 154; affd., 188 N. Y. 549; *People ex rel. Schneider* v. *Hayes,* 108 App. Div. 6; *Preston* v. *Preston,* 227 id. 670; *O'Brien* v. *O'Brien,* 228 id. 837; *Hallow* v. *Hallow,* 200 id. 642; *Harris* v. *Harris,* 259 N. Y. 334.)

In *People ex rel. Strauss* v. *Steindler* (223 App. Div. 230) the relator sought to regain possession of her younger child through a writ of habeas corpus, the child having previously been awarded to the other party by a modified final divorce decree. After stating that " the proper remedy for the modification of such a decree is found in section 1170 of the Civil Practice Act " (p. 232), the court further held that " this is an exclusive remedy where there has been a direction in a decree of divorce affecting the custody of children, and a modification of such decree by way of an order or a habeas corpus writ permitting a revival of the right of visitation, which the relator has abandoned, is not authorized " (p. 233). If that be the rule with respect to the custody of children provided for in a divorce decree, wherein is there any distinction with respect to their support and maintenance?

An implied contract must arise " from the implied assent of the parties as evidenced by their conduct rather than by express words of agreement," and contracts implied by law are created in many instances against the will of the party to be charged " by reason

of a fictitious promise created by law * * * for the purpose of the remedy." (Clark N. Y. Law of Contracts, § 3.) In this case, confining our discussion strictly to the relation between the claimant and the decedent and leaving out of view the interests of the children and the State, have we here, express or implied, any promise on the part of Altmann to reimburse the claimant for the maintenance and education of their children, or any expectation at any time prior to decedent's death on the part of the claimant that she should be so reimbursed? Even with respect to contracts implied in fact the circumstances must be such that at least an inference may be drawn that the one party expected compensation and the other party intended to make such payment. Contracts implied in law are different only to the extent that the law itself implies a promise on the part of one to pay whether or not such promise actually was made or even intended. The court in *Matter of Kleinman* (146 Misc. 747, 750) expressed the thought thus, " so, too, unless there is clear proof that the recipient expected to pay there is no liability," or as expressed in *Matter of Hughes* (229 App. Div. 614, 616), " in order that the contract may be implied between members of the same household both the renderer *and* the recipient of service must have expected the reasonable value thereof to be charged and paid for. It is not sufficient that one of the parties may have expected compensation."

It was said in *Matter of Hamilton* (70 App. Div. 73, 76; affd., 172 N. Y. 652) that " undoubtedly if the wife chooses to assume the burden and does in fact apply her income to the maintenance of the family, intending that the same shall be gratuitous, no recovery can be had for the amount so expended."

There is no proof that any bill or claim was ever presented to the intestate during his lifetime and this omission requires careful scrutiny of the claim and very satisfactory proof thereof. (*Matter of Dole,* 168 App. Div. 253, 255; *Lyon* v. *Smith,* 142 id. 186.)

Coming for the first time after the decedent's death the claim has very much the appearance of an afterthought. (*Matter of Ivory,* 146 Misc. 803, 807; *Clayburgh* v. *Clayburgh,* 261 N. Y. 464, 469.)

The concurring opinion of Judge Laughlin in *Krotosky* v. *Krotosky* (169 App. Div. 850, 857) fairly states, I think, the real situation here in that " by separating from him and supporting herself and children by her earnings, or otherwise, for many years, without calling upon him to perform his duty in that regard, or applying to any court to compel the performance of that duty, it is a fair presumption, I think, although of course not conclusive,

that she preferred to live with her children apart from her husband, and was quite satisfied to support herself and them without calling upon him for assistance."

While the court in *Matter of Nutrizio* (145 Misc. 626) recognizes the often-cited case of *De Brauwere* v. *De Brauwere* (203 N. Y. 460), distinguishes it by stating that " but where, as here, she failed to enforce her rights or to make any attempt to do so whatsoever, she must be held to have waived the obligation on his part to support her."

The court in *Kosanke* v. *Kosanke* (137 Minn. 115) used this rather appropriate language, " the question here is whether plaintiff used her money to pay the household expenses under circumstances which imported that she did not expect it to be repaid by her husband. If she paid these expenses without expecting that the money would be repaid, she is not entitled to recover it from the estate, but if she paid them in the belief that her husband would repay the money so paid out, she is entitled to recover it from his estate."

The conclusion is that (1) in this court the New York divorce decree is *res adjudicata;* (2) claimant's remedy was to apply to the Supreme Court during decedent's lifetime for modification of the divorce decree, and (3) presentation of the claim after such lapse of time negatives any implied contract and indicates an intention on claimant's part not to seek reimbursement.

The claim is dismissed.