It is apparent from the petition of Jeanie Dale Farguhar, and others as originally filed, that it was drafted upon the theory that the attorneys for petitioners had rendered services which inured to the benefit of all interested in the James L. Hamilton estate, which they alleged they would be compelled to pay unless ordered paid out of the assets of the estate; and under the common fund doctrine, they claim they are equitably entitled to have the services of their attorneys paid out of the estate.
The general rule is that an attorney must show a contract of employment in order to recover for services rendered (In *Page 553 re Baxter's Estate, 94 Mont. 257, 22 P.2d 182), but to this rule there is a recognized exception to the effect that where a fund has been created or brought into court through the efforts of an attorney, he has a lien thereon for his services, and those who benefit thereby should bear their just share of the expense which produced the fund. (Burroughs v. Toxaway Co., 185 Fed. 435, 107 C.C.A. 505; In re Gillaspie, 190 Fed. 88; McCormick
v. Elsea, 107 Va. 472, 59 S.E. 411; American Engineering Co.
v. Metropolitan By-Products Co., 275 Fed. 40; State v.District Court, 90 Mont. 213, 224, 300 P. 544; 6 C.J., sec. 394.)
"It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefrom. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved." (In re Gratton's Estate, 136 Or. 225,298 P. 231, 79 A.L.R. 517; 2 Thornton on Attorneys at Law, sec. 514; Weeks on Attorneys at Law, 2d ed., sec. 339; In re Baxter'sEstate, supra; Fields v. Fields, 139 Or. 41,3 P.2d 771, 7 P.2d 975; Upham v. Bramwell, 105 Or. 597,209 P. 100, 210 P. 706, 25 A.L.R. 919; In re MacMullen'sEstate, 117 Or. 505, 243 P. 89, 244 P. 644; Butt v.Murden, 154 Va. 10, 152 S.E. 330, 69 A.L.R. 1048.)
Petitioners contend that there was an implied contract on the part of Davis, administrator and executor, and Louise Frances Stahl, and the clients of W.D. Kyle, to pay for the services of attorneys O'Donnell and Claxton. "In general an implied contract, in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it, the substantial difference between the two being in the mere mode of proof by which they are respectively established." (Smith v.Moynihan, 44 Cal. 53.) "Both grow *Page 554 
out of the intentions of the parties to the transaction, and there must be a meeting of minds whether the contract is express or implied." (Troyer v. Fox, 162 Wn. 537, 298 P. 733, 77 A.L.R. 1132.) As to contracts implied in fact, the circumstances must be such that at least an inference may be drawn that the one party expected compensation and the other party intended to make such payment. (In re Altmann's Will, 266 N.Y. Supp. 773.)
There is no statutory authority for the allowance or payment to respondents of counsel fees out of the estate. This court has, when the question was squarely presented, held in the following decisions that costs do not include attorney fees unless expressly so provided by statute. (Federal Surety Co. v. BasinConst. Co., 91 Mont. 114, 5 P.2d 775; McBride v. SchoolDistrict, 88 Mont. 110, 290 P. 292; Bovee v. Helland,52 Mont. 151, 156 P. 416, see, also, Arnold's Estate, 121 Cal.App. 247,8 P.2d 897; Quinn's Estate, 179 Mich. 61,146 N.W. 297; Brown v. Corey, 134 Mass. 249; Morrill v.Wiseman, 134 Mass. 252; Hamilton v. Trundle, 100 Md. 276,59 A. 719; Deehan's Will, 130 Me. 243, 154 A. 645;Warrington's Will, 2 Boyce (Del.), 595, 81 A. 501; Donges'Estate, 103 Wis. 497, 79 N.W. 786, 74 Am. St. Rep. 885;Creighton's Estate, 76 Neb. 625, 107 N.W. 979, 110 N.W. 626;Stover v. Wayne, Probate Judge, 219 Mich. 566, 189 N.W. 14.)
Rule as to allowance of attorneys' fees: When several people are interested in a fund and some service to that fund is necessary, if one of the parties interested performs those necessary services at his own expense, a court of equity will imply a contract on his part to perform them for all. (Buell v.Kanawha Lumber Corp., 201 Fed. 762, 769; Faling's Estate,113 Or. 6, 228 P. 821.) The jurisdiction of the probate court to allow attorneys' fees is akin to the jurisdiction of the equity courts. (Faling's Estate, supra.) This jurisdiction is further secured to the probate court under the provisions of *Page 555 
sections 10372, 10326 and 8750, Revised Codes 1921. This court decided that section 10372 vests these equity powers in the probate court. (Estate of Carroll, 59 Mont. 403, 196 P. 996.) It provides: "The district court, or the supreme court on appeal, may in its discretion order costs to be paid by any party to the proceeding or out of the assets of the estate as justice may require." And section 8750 lays down this maxim: "He who takes the benefit must bear the burden." This maxim quoted above is the basis of the reasoning whereby the courts have deduced an implied contract to exist between those who protect or preserve a fund and the fund itself. They are the agents of the fund and of its owners. (Forrester MacGinniss v. Boston Montana Consol.etc. Min. Co., 29 Mont. 399, 74 P. 1088, 76 P. 211.) These rules have no particular application but are as general as the laws of reason itself. They were applied in the Faling's EstateCase, supra, to a will contest, and in Adams v. KehlorMilling Co., 38 Fed. 281, to a fund in the federal court. The same rules were applied in McIntire v. McIntire,192 U.S. 116, 24 Sup. Ct. 196, 48 L.Ed. 369, and to an heirship proceeding in Kirk v. Breed, 4 Ohio S. C.P. Dec. 403, 3 Ohio N.P. 122. For a long list of all the kind of cases to which these rules have been applied by the courts, see extensive note, 49 A.L.R. 1150; Merica's Estate, 99 Neb. 229, 155 N.W. 887; Re Statler'sEstate, 58 Wn. 199, 108 P. 433; Louisville PresbyterianTheological Seminary v. Botto, 117 Ky. 962, 80 S.W. 177, 25 Ky. Law Rep. 2137; Farmers' Loan Trust Co. v. Green, 79 Fed. 222, 24 C.C.A. 506.
Costs: In Baxter's Estate, 94 Mont. 257, 269,22 P.2d 182, this court reserved for future consideration the question as to whether the term "costs" includes attorney's fees. It seems to us that this question depends, like all other questions here, upon the facts of each separate case. If the services of the attorney are such that an implied contract exists between the attorney and those for whom he has worked as well as for himself, then the "costs" are not costs at all, but are the payment of the attorney for services he rendered to an *Page 556 
implied employer. (Faling's Estate, supra.) This was the view taken by this court in Forrester MacGinniss v. Boston Montana Consol. etc. Min. Co., supra, where the court cited with approval a statement made by the Tennessee court in Grant v.Lookout Mountain Co., 93 Tenn. 691, 28 S.W. 90, 27 L.R.A. 98. There the court decided that the Lookout Mountain Company was deemed to have hired the attorneys. It would be strange logic indeed which would say that the person who hired an attorney could discharge the obligation by paying court costs. InTrustees of Internal Improv. Fund v. Greenough, 105 U.S. 527,26 L.Ed. 1157, the court said: "It would be very hard on him to turn him away without any allowance except the paltry sum which could be taxed under the fee bill." It is on this reasoning that courts, when deciding under the common fund doctrine, have allowed attorney's fees as "costs." Their reasoning, however, clearly shows that the successful lawyer received attorney's fees as payment for his services as attorney for the fund by implication.
The question as to whether attorney's fees are included in "costs" in general estate matters depends upon whether the services were necessary expenses of administration. These cases are not different from the common fund and implied contract cases. (See McIntire v. McIntire, 192 U.S. 116,24 Sup. Ct. 196, 48 L.Ed. 369; Smith v. Haire, 138 Tenn. 255,197 S.W. 678.)
It becomes apparent that no hard-and-fast rule can be laid down whereby it can be determined that the word "costs" does or does not include attorney's fees. It always depends upon the circumstances of the particular case. If there is an implication of hiring or an equitable obligation to pay (and we see no difference between the two), then the word "costs" includes attorney's fees. The same is the result if the services brought benefit to an estate, corporation or fund in which others were interested and received benefit. But a litigant is never allowed "costs" which include attorney's fees against a litigant whom he opposed. *Page 557 
We reiterate that the fund here involved is not the estate of James L. Hamilton; the fund directly attacked in court was one-half of the share of Elizabeth D. Baxter as sole heir. The services we rendered were beneficial to that fund in preserving it and saving it from expense and delay; these services were adopted by the executor of the Baxter estate to procure its distribution to him, and a charge made against that fund in the hands of the administrator will equitably apportion itself, no matter who are its ultimate recipients. All of the recipients, whoever they may be, have an interest akin to ours — a common interest in a common fund.
This is an appeal from a judgment awarding attorney's fees against the estate of James L. Hamilton, deceased. The facts giving rise to the controversy are these:
James L. Hamilton died intestate at Butte on April 11, 1930, leaving an estate valued at about $2,000,000, and leaving surviving as his sole heir at law Elizabeth D. Baxter, a sister. Andrew J. Davis was appointed and qualified as administrator of his estate. Before distribution of the estate Elizabeth D. Baxter died in Butte, leaving a will under the terms of which she gave one-fourth of her estate to Louise Frances Stahl, a minor, excepting the Windsor Hotel building in Butte, which was devised to Jerry Clifford. Specific legacies amounting in all to $21,500 were also made, but these are not of importance so far as this appeal is concerned. As to the rest of her estate she died without disposing of it by will. Andrew J. Davis was appointed and qualified as executor of the will. Soon after the death of Elizabeth D. Baxter many claimants, all residents of Scotland, appeared in both estates, claiming to be heirs. Sarah J. Planner appeared and claimed to be a niece of both decedents. James Hamilton, of Glasgow, Scotland, claimed to be a nephew of both decedents. Jeanie Dale Farguhar and thirty-two others entered appearances through Philip O'Donnell, their attorney, and claimed to be first cousins of both *Page 558 
decedents. James Hamilton and six others appeared through attorney W.D. Kyle and claimed to be first cousins of both decedents.
Andrew J. Davis, as executor of the Elizabeth D. Baxter estate, filed his petition in the estate of James L. Hamilton, deceased, praying that the court ascertain and declare the rights of all persons in the estate, and determine to whom distribution should be made. He filed complaint setting forth his claim of heirship and interest in the estate as executor of the Elizabeth D. Baxter estate, and served a copy upon each of the parties who had entered their appearance. Jeanie Dale Farguhar and the thirty-two others represented by attorney Philip O'Donnell filed answer to the complaint, admitting that Elizabeth D. Baxter was the sole heir of James L. Hamilton, deceased, and setting up their claims of heirship as cousins of both decedents. Sarah J. Planner defaulted, and she was later adjudged to have no interest in the estate. James Hamilton, of Glasgow, filed an answer in which he claimed to be the son of William Hamilton, an alleged deceased brother of James L. Hamilton. On July 29, 1932, the name of John K. Claxton, who had formerly appeared as attorney for Sarah Jane Planner, was entered as associate counsel for Jeanie Dale Farguhar and the thirty-two other claimants represented by Mr. O'Donnell.
It appears that in July, 1932, Mr. O'Donnell left Butte to go to Scotland for the purpose of securing evidence to establish the relationship of his thirty-three clients as cousins of James L. Hamilton and Elizabeth D. Baxter, and to disprove the relationship of James Hamilton, of Glasgow. Before leaving Butte, O'Donnell had a conference with attorney J.A. Poore, who represents Andrew J. Davis as executor and administrator, and with W.D. Kyle. The purpose of this conference was to ascertain whatever information Poore and Kyle might have that would be of assistance to O'Donnell in establishing the relationship of his clients and disproving the relationship of James Hamilton, of Glasgow. The evidence as to what was said at this conference is in some respects conflicting. *Page 559 
It fairly appears, however, that Mr. Poore readily gave O'Donnell all the information he had bearing upon the relationship under consideration. He exhibited to Mr. O'Donnell a copy of the birth certificate of James Hamilton, of Glasgow, and he also exhibited a copy of an affidavit made by Elizabeth D. Baxter before her death, in which she stated that the only children of her father and mother were John, Elizabeth, James and Cecilia; that John had not been heard of for more than fifty years; that Cecilia had died when a baby, and that neither she nor James ever married, and that she was the sole surviving heir of James. Mr. O'Donnell was advised of the fact that Mr. Poore had employed a firm of attorneys named West, Anderson Murdock, of Glasgow, to determine who Sarah Jane Planner and James Hamilton, of Glasgow, were, and that Mr. Kyle had employed the firm of Stobo Pait, of Newcastle-on-the-Tyne, as his associate counsel. He also informed Mr. O'Donnell that the firm of West, Anderson Murdock had written him to the effect that James Hamilton, of Glasgow, claimed that James L. Hamilton, of Butte, had two brothers, Samuel and William, and that he (James) was the son of William, deceased. Mr. O'Donnell was also advised that William Hamilton, the father of James L. Hamilton and Elizabeth D. Baxter, died at Butte in 1894, aged 69 years, and that his estate was distributed to his second wife and to his two children, James L. Hamilton and Elizabeth D. Baxter, and that for James Hamilton, of Glasgow, to establish his claim it would be necessary that he prove that James L. Hamilton and Elizabeth D. Baxter had brothers named William and Samuel, and also that their father, William, was approximately 90, instead of 69, years of age when he died. At the request of Mr. O'Donnell, Mr. Poore gave him a letter of introduction to West, Anderson Murdock. Mr. O'Donnell says that Mr. Poore during this conference said to him, "Don't pay too little attention to James Hamilton"; that "Ferd Gaines is a good lawyer, and he will come in with at least a prima facie case"; that "Chancellor, you would do yourself and all of us some good if you got rid of James Hamilton"; *Page 560 
and that Mr. Kyle then said, "Yes, Chancellor, that would be something to do"; that Poore also said, "Don't worry so much about taking the depositions of your own clients. Go to James Hamilton's lawyers, get all the records you can get — get the dope on it, and plant it down in front of them, and if you have the stuff make them quit."
The record discloses that Mr. O'Donnell, after arriving in Scotland obtained from public records, and otherwise, sufficient evidence to demonstrate conclusively that James Hamilton, of Glasgow, was not related to James L. Hamilton, deceased, of Butte. While there he obtained a release and assignment of the claims of James Hamilton, of Glasgow, in both estates, to the thirty-three claimants represented by himself and Mr. Claxton, in payment of eighty pounds sterling.
Through Mr. Gaines, of Butte, the claim of James Hamilton, of Glasgow, was irrevocably withdrawn in both estates. Thereafter a decree was entered in the James L. Hamilton estate to the effect that Elizabeth D. Baxter was the sole and only heir at law of James L. Hamilton, deceased. Thereafter the thirty-three clients represented by Claxton and O'Donnell, together with Claxton, O'Donnell, G. Merlaud and W.C. Cox, filed the petition for allowance of attorney's fees against the James L. Hamilton estate. Merlaud was representing the thirty-three claimants on a contingent basis of forty per cent. His home was in Paris, France, and he had agreed personally to pay all expenses, including attorneys' fees and court costs incident to the establishment of their claims. Merlaud had appointed W.C. Cox, of Chicago, as attorney-in-fact for the thirty-three claimants with power of substitution, and assigned to him twenty-four per cent. of any amount payable from the estate to the thirty-three claimants. Cox in turn named Philip O'Donnell to represent the thirty-three claimants.
At the conclusion of the hearing for the allowance of attorneys' fees the court found for the petitioners in the sum of $40,000. There was ample evidence that the services were reasonably worth that amount. The court made findings of fact, reciting the foregoing facts, and found, among other *Page 561 
things, that the services of O'Donnell preserved, protected and defended one-half of the estate of James L. Hamilton deceased, for distribution to Andrew J. Davis, as executor of the last will and testament of Elizabeth D. Baxter, deceased, and were necessary to be performed for the preservation, protection and defense of the one-half share. But the court found "that there was no express contract for said services between Andrew J. Davis, as executor or administrator, nor between J.A. Poore, nor William D. Kyle, and said Philip O'Donnell and John K. Claxton."
The sole question presented by this appeal is whether the court properly allowed the attorneys' fees.
From the foregoing facts it is apparent that if James Hamilton, of Glasgow, had been a nephew of James L. Hamilton, deceased, he would have been entitled to one-half of the latter's estate, and would have been entitled to all of the Elizabeth D. Baxter estate, except as to the legacies made in her will. It is also apparent that if James Hamilton, of Glasgow, had been an heir, none of the clients of Philip O'Donnell, or of Mr. Kyle, would have been entitled to any portion of either estate. In consequence, so far as the services of O'Donnell served to eliminate James Hamilton, of Glasgow, from the picture, such services were beneficial not only to his own clients but to everyone interested in both estates, except the legatees named in the will of Elizabeth D. Baxter.
The theory on which the petitioners sought attorneys' fees and[1] the theory on which they were granted by the trial court is that the services of Mr. O'Donnell were necessary to protect, preserve and defend the estate against the claim of James Hamilton, of Glasgow, and that they were beneficial to the estate as a whole; and that in justice and equity all the beneficiaries of the estate should bear their proportionate share of the expense for such services. To that question, therefore, we shall now address ourselves.
The same question, but under slightly different circumstances, was presented to this court in In re Baxter's Estate, *Page 562 94 Mont. 257, 22 P.2d 182. In that case we said: "The fact that an attorney's services in managing a cause are as beneficial to another party as to his own client will not raise an assumption that such other party is liable therefor unless the services are accepted by the latter, and it was understood he was to be liable also. (Weeks on Attorneys, 2d ed., sec. 339;McHatton v. Girard, 41 Mont. 387, 109 P. 704.) `It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefor. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved.' (2 Thornton on Attorneys at Law, sec. 415; In re Gratton, supra [136 Or. 224, 298 P. 231, 79 A.L.R. 517].) We are satisfied this is the correct rule. If it were otherwise, why could not the estate be made liable for the attorneys' fees of each legatee if each saw fit to employ a different attorney to defeat the will contest? * * * In the exhaustive note to In re Gratton, supra, 79 A.L.R. 522, it is said that `the general rule is that no allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate,' with a large number of supporting cases.
"Nor is Mr. Clifford aided by the common fund doctrine. As was[2] said in Ford v. Gilbert, 44 Or. 259, 75 P. 138, 139: `When a fund is brought into court through the service of an attorney, or where his services have added to or preserved or increased the amount being administered, the court of primary jurisdiction may properly allow a reasonable compensation for his services to be paid from the fund.' (Compare Forrester MacGinniss v. Boston etc. Min. Co., 29 Mont. 397,74 P. 1088.) But here Clifford's attorney did none of these *Page 563 
things. He did not enhance nor benefit the estate in any way. That his services were valuable in the will contest may not be gainsaid, but they were rendered in behalf of his client Clifford in sustaining the validity of the will, upon which alone Clifford's interest in the estate depended. The ultimate question, dependent upon the validity of the will, was whether the beneficiaries would receive that which the testatrix undertook to give them, or whether the estate would go wholly to her heirs. The corpus of the estate would be the same in either event."
So it is in this case. The corpus of the estate of James L. Hamilton, deceased, was not enhanced by the services of O'Donnell, if we assume that his services were necessary to defeat the claim of James Hamilton, of Glasgow. All that was done by him was to establish who of conflicting claimants were entitled to share in the estate. If we assume that the services of O'Donnell were necessary to defeat the claim of James Hamilton, of Glasgow, they were rendered by him in behalf of his clients, and in the performance of the duties he owed to his clients, and the benefits flowing to others interested in the estate were merely incidental and cannot form the basis of a claim for compensation against the estate. (O'Doherty v.Bickel, 166 Ky. 708, 179 S.W. 848, Ann. Cas. 1917A, 419.) "As well might it be contended that the attorney who obtains the enunciation of a new doctrine of the law should have compensation from all who are thereafter in virtue of that doctrine victorious in the courts." (O'Doherty v. Bickel, supra.)
What was said in American Engineering Co. v. MetropolitanBy-Products Co., 275 Fed. 40, has application here. The court said: "The attorneys for these various claimants were seeking to reduce the claim of the Sanitary Company upon the fund and so increase the surplus, each for the benefit of his own particular client and for no one else. There was not in any case a representative proceeding in which one party creates or preserves a fund not only for his own benefit but also for the benefit of others similarly situated, who, having received the benefit of the proceeding, ought in equity to contribute to the *Page 564 
payment for those services. It is a misnomer to speak of these attorneys as either creating or preserving a fund, at least for the benefit of anybody else than their own clients. The fund existed to the knowledge of everyone, and the only question was which of the competing claimants was entitled to it. And this could not be known until a final distribution. Otherwise everyone who had spent time and study in preparing a brief or in cross-examination of witnesses or in objecting to the special master's report and the decree of the district court as to this fund, would be entitled to compensation out of it whether his client were ultimately found to have any interest in it or not."
This is not a case where those who benefited by the services of O'Donnell had refused to take proper steps to preserve the funds involved, as was the case in State ex rel. Lewis and ClarkCounty v. District Court, 90 Mont. 213, 300 P. 544; nor is it a case where those who are sharing in the benefits of the services sat idly by, as in the case of Buell v. KanawhaLumber Co., 201 Fed. 762. Kyle and Poore had accumulated considerable evidence to show that James Hamilton, of Glasgow, was not entitled to share in the estate. If O'Donnell and his clients were not satisfied with the sufficiency of that proof, they were of course at liberty to assemble more, but not at the expense of others interested in the estate in the absence of an agreement or understanding to that effect as here.
The burden of establishing the claim of James Hamilton, of Glasgow, would have rested upon him. How he could have borne this burden, in the face of the counter-proof which Poore and Kyle had assembled before O'Donnell went to Scotland, is difficult to comprehend. Whether he could have done so is extremely doubtful, to say the least.
The case of In re Faling's Estate, 113 Or. 6, 228 P. 821, is relied upon by petitioners as sustaining the right to an allowance of attorneys' fees against the estate. That was a case involving a will contest. The attorneys to whom the fees were allowed had defeated a will made in 1915, and established *Page 565 
a will of 1911, under which the beneficiaries were different from those under the will of 1915. The court in allowing attorneys' fees made this pertinent observation: "This is not a mere contest among the heirs and legatees in the matter of distribution of the estate."
In Nichols v. Wallace, 155 Okla. 231, 9 P.2d 430, the court had this to say: "Suppose A is an administratrix, B claims the entire estate as the sole heir of decedent, and C claims the entire estate as the sole heir of decedent. A contest as to the heirship is filed in the administration proceedings. It is the duty of A to preserve the estate during the pendency of the contest. A doubtless would not allow attorneys' fees paid to B or C as a charge against the estate. If she allowed it for one, it should be allowed for the other, but neither should be allowed, because that is a contest between individuals or rival claimants, and is a personal matter between them and their attorneys."
Let us suppose that it was entirely through the services of O'Donnell that the claim of James Hamilton, of Glasgow, was determined to be without merit, and let us also assume that he was unsuccessful in establishing the claims of his clients, but that he furnished the evidence to prove the claims of Kyle's clients. Could he then recover from the estate where, as here, his only employment was with his unsuccessful clients? The supreme court of California has answered in the negative. (Estate of Walden, 174 Cal. 776, 164 P. 639.)
Under the circumstances here, where what was done by O'Donnell was thought necessary by him to establish the claims of his own clients, they, and not the estate, must pay for his services. The[3] mere acceptance of the benefit of the services by the estate is not sufficient to establish an implied promise to pay for such services, where the estate was not free to choose between taking and rejecting the benefits. (2 R.C.L. 1048, note 1.) Here the benefits were accepted only because the services produced cumulative evidence having the same effect as that already assembled by the attorney representing the estate. *Page 566 
The judgment is reversed and the cause remanded, with direction to dismiss the proceedings.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, ANDERSON and STEWART concur.
Rehearing denied June 9, 1934.