Tono L. HOOKER, Administrator of the Estate of Flora B. Barton, deceased, and Tono L. Hooker and J. D. Hooker, individually, Plaintiffs in Error,

v.

Chandos A. HOSKYNS, surviving co-special Administrator of the Estate of Flora B. Barton, deceased, et al., Defendants in Error.

No. 37430.

Supreme Court of Oklahoma.

May 27, 1958.

Rehearing Denied July 30, 1958.

G. C. Spillers, G. C. Spillers, Jr., Tulsa, for plaintiffs in error.

Jim A. Rinehart, El Reno, Lewis C. Johnson, V. J. Bodovitz, Oklahoma City, Manatt, Knight & Knight, Milsten, Milsten & Morehead, Tulsa, for defendants in error.

WILLIAMS, Justice.

This is an appeal from a judgment of the district court of Tulsa County, upon trial de novo affirming a judgment of the county court of that county awarding fees to the special administrators of the estate of Flora B. Barton, deceased, as well as fees to the attorneys for such special administrators, and refusing to surcharge the special administrators with the interest allowed to accrue by the failure to pay federal and state estate taxes when due. Tono L. Hooker, administrator of the estate of Flora B. Barton, deceased, and Tono L. Hooker and J. D. Hooker, individually, as heirs of Flora B. Barton, deceased, are plaintiffs in error, and Chandos A. Hoskyns and Charles O. Barton, special administrators of the estate of Flora B. Barton, deceased, and their attorneys, are defendants in error. After the hearing of

this cause, Charles O. Barton died, as did one of the attorneys involved, and the action was revived in the name of their respective personal representatives.

Flora B. Barton and Lucy H. Hooker were sisters. In March, 1945, Flora B. Barton deeded all of her real estate, except for one lot, to Lucy H. Hooker. Although the deeds were general warranty deeds without any exception or reservation, Flora B. Barton, after the execution and delivery of such deeds, continued in possession and control of such real property up until the date of her death on March 12, 1950. Lucy H. Hooker died on January 17, 1949, leaving as her sole and only heirs at law, the plaintiffs in error herein, Tono L. Hooker and J. D. Hooker. After the death of Flora B. Barton, Tono L. Hooker was appointed administrator of her estate. Tono L. Hooker was also appointed administrator of the estate of Lucy H. Hooker, his mother, the grantee in the above mentioned deeds. Thereafter certain other heirs at law of Flora B. Barton asserted that such deeds were void and filed an application to remove or suspend Tono L. Hooker as administrator of the Estate of Flora B. Barton, deceased, on the ground that his interest was adverse to that of that estate and that there was a conflict of interest between the estates of Flora B. Barton, deceased, and Lucy H. Hooker, deceased. On June 6, 1950, by agreement of the parties, the county court entered an order suspending Tono L. Hooker as administrator of the estate of Flora B. Barton, deceased, appointing Chandos A. Hoskyns and Charles O. Barton as special administrators of the estate, and appointing Milsten, Milsten, Johnston & Morehead and Manatt, Knight & Knight, and Felix Bodovitz as attorneys for the special administrators.

The special administrators, together with certain of the heirs of Flora B. Barton, thereafter instituted an action against Tono L. Hooker as administrator of the estate of Lucy H. Hooker, deceased, and Tono L. Hooker and J. D. Hooker, individually as her sole heirs at law, to cancel the above mentioned deeds, alleging that the same were void. This litigation, together with certain other litigation hereinafter referred to, was carried on for a period of some 5 years, and apparently involved a considerable amount of work, but ultimately resulted in a judgment in favor of the estate of Lucy H. Hooker, upholding the validity of the deeds, which judgment was affirmed on appeal in Hoskyns v. Hooker, Okl., 283 P.2d 1109. The special administrators were also involved in other litigation, including two actions the details of which may be found in the opinions in Barton v. Hooker, Okl., 283 P.2d 514, and Barton v. Hooker, Okl., 283 P.2d 1113, and two other actions in district court which were not appealed.

After all of the above mentioned litigation had been completed, and the mandates had issued in the cases appealed, Tono L. Hooker, on July 19, 1955, filed an application for reinstatement as administrator of the estate of Flora B. Barton, and for discharge of the special administrators. Thereafter, the county court entered an order reinstating Tono L. Hooker as administrator of Miss Barton's estate and ordering the special administrators to file a final account. The special administrators filed their final account in which they prayed that fees be set and allowed for themselves and their attorneys. To this final account, Tono L. Hooker, as administrator of the estate of Flora B. Barton, deceased, filed formal objections and prayed that the special administrators and their attorneys be denied compensation and further prayed that the special administrators be surcharged in a sum equal to the amount of interest which had accrued upon the estate taxes due the State and Federal Governments by virtue of failure to pay such taxes when due. After a hearing upon the matter, the county court made an order approving the final account of the special administrators and awarding them a fee of $500 each, and awarding their attorneys a fee in the total amount of $12,500, to be paid from the assets of the estate. The county court found that the estate tax matters had been badly handled,

but that such handling did not warrant surcharging the special administrators as prayed, and denied the application of plaintiffs in error to surcharge the special administrators for the interest upon estate taxes which had accrued by virtue of failure to pay such taxes when due. Upon trial de novo, the district court affirmed the judgment of the county court, and plaintiffs in error have perfected this appeal.

■ As their first proposition of error, plaintiffs in error assert that no attorneys fees may be allowed in this case except for services used and useful to the estate of the deceased as a whole. In support of such proposition, plaintiffs in error cite the cases of Nichols v. Wallace, 155 Okl. 231, 9 P.2d 430; In re Baxter's Estate, 94 Mont. 257, 22 P.2d 182; In re Hamilton's Estate, 96 Mont. 551, 33 P.2d 258; Rowe v. Eggum, 107 Mont. 378, 87 P.2d 189; In re Schwint's Estate, 183 Okl. 439, 83 P.2d 161; Steger v. Gibson, Okl., 287 P. 2d 687; and In re Parr's Estate, Okl., 287 P.2d 906, and contend that the cited cases definitely establish the doctrine that before an attorney is entitled to compensation in a probate proceeding, he must bring himself within the common fund doctrine, that is to say, that he must make a contribution to the welfare of the entire estate, otherwise he is not entitled to attorneys' fees. The cases cited, however, are all cases in which an attorney *not employed by the personal representative* of the estate involved attempted to recover an attorney fee from the estate, and so far as lawyers *not employed by the personal representative* of the estate involved are concerned, such cases do establish the doctrine contended for by plaintiffs in error. They establish no such doctrine, however, with regard to an attorney duly employed by the personal representative of the estate, with the approval of the county court, to represent such personal representative and the estate. In the case at bar, the attorneys in question were duly employed by the special administrators, and, in fact, were appointed by the county court, to represent the special administrators and the estate as a whole, and did represent such

special administrators and the estate as a whole in numerous proceedings and actions over a period of several years. Under such circumstances, such attorneys are entitled to the payment of a fee in the amount of the reasonable value of the services rendered, which both the county court and trial court determined to be in the amount of $12,500, which amount in view of the record in this case we approve. We find no merit in the first proposition.

As their second proposition, plaintiffs in error assert that the special administrators should be denied fees, and surcharged because they negligently and carelessly failed and neglected to pay estate taxes as the same became due and payable. The factual situation upon which this proposition is based has not been heretofore set out herein, and must therefore now be detailed.

Flora B. Barton died on March 12, 1950. Under the pertinent U. S. and Oklahoma Statutes both the federal and state estate taxes became due and payable fifteen months after Miss Barton's death, or upon June 12, 1951, and if not paid by such date, bore interest from such date until paid. The special administrators were appointed and took charge of Miss Barton's estate on June 6, 1950, and remained in complete control thereof until the reinstatement of Tono L. Hooker as administrator of Miss Barton's estate on August 2, 1955. The evidence reveals that on or about June 12, 1951, the date the taxes became due and payable, the special administrators filed a federal estate tax return but did not pay any of the tax due thereon. For some reason, not revealed by the evidence, no Oklahoma estate tax return was filed by the special administrators until April 16, 1954, and the tax due on it was likewise not paid.

In April, 1954, the Director of Internal Revenue issued to the special administrators what is commonly known as a "90 day letter", assessing federal estate taxes in the amount of $55,582.29, with interest thereon at the rate of 6% per annum from the 12th day of June, 1951, against the

estate of Flora B. Barton, deceased. By virtue of the provisions of the Internal Revenue Code, an assessment of taxes by "90 day letter" becomes final and not subject to further question after the expiration of 90 days from the date of the issuance of such letter, unless within such 90 day period a petition for redetermination of the tax is filed in the Tax Court of the United States, or the tax is paid under protest and an action filed in United States District Court to recover such portion of the tax as may have been improperly assessed. The special administrators, however, took no action to question the correctness of the assessment of federal estate taxes, and the same became final in July, 1954.

On May 7, 1954, the Oklahoma Tax Commission likewise issued an order assessing estate taxes against the estate of Flora B. Barton, deceased, in the principal amount of $13,786.94, with interest thereon at the rate of 12% per annum from June 12, 1951. This assessment became final on June 6, 1954, by virtue of the pertinent Oklahoma Statutes, except as to a portion of the interest assessed. The special administrators did, on May 28, 1954, procure an order from the county court under the provisions of 68 O.S.1951 § 989d, the effect of which was to reduce the interest rate on a portion of the estate tax from 12% per annum to 6% per annum, but otherwise took no action to prevent the assessment from becoming final.

On January 26, 1955, the special administrators paid to the Oklahoma Tax Commission, the sum of $13,786.94, which represented the principal amount of the estate tax assessed by the Oklahoma Tax Commission against the estate of Flora B. Barton, deceased, but paid none of the interest which had accrued thereon. On the same date, such special administrators paid to the Director of Internal Revenue the sum of $43,667.29, to be applied on the federal taxes assessed against the estate of Flora B. Barton, deceased, which left still due and owing thereon the sum of $11,915 in taxes plus accrued interest which at the time amounted to around $12,000.

At the time of Miss Barton's death, her estate was composed largely of liquid assets, such as United States Savings Bonds, Savings Accounts in various banks and savings & loan associations, and thousands of dollars in cash, in safety deposit boxes. These assets were of a total value of around $80,000 and were taken over by the special administrators after their appointment on June 6, 1950. As already indicated, the federal and state estate taxes on the estate of Flora B. Barton, deceased, both became due and payable on June 12, 1951, at which time the special administrators still had on hand, in their possession and under their control, liquid assets of the estate of Flora B. Barton, deceased, in the value of around $80,000. The amount of estate tax due the Federal Government on June 12, 1951, was $55,582.29, and the amount of estate tax due the State of Oklahoma was $13,786.94, making a total amount of tax due to the State and Federal Governments of $69,369.23. Since the special administrators had on hand, in their possession and under their control, liquid assets of the value of some $80,000, it is apparent that they had sufficient funds available to pay the estate tax due the State and Federal Governments in full on the date it was due. The evidence reveals, however, that at the time of the trial of this matter, there was left on hand in the estate of Flora B. Barton, deceased, a balance of around $26,000, at which time there was still due and owing the Federal Government estate tax in the principal amount of $11,915, together with accrued interest in the amount of $12,507.91, and there was due and owing the State of Oklahoma the amount of $2,998.66 as accrued interest due on the Oklahoma estate tax, making a total indebtedness for estate taxes and interest of $27,421.57, which amount, of course, exceeds the amount of the balance on hand in the estate. Plaintiffs in error contend, however, that the interest on the state and federal estate taxes, which at the time of the trial totaled the sum of $15,506.57, accrued and became a liability of the estate solely because of

the fault and neglect of the special administrators in failing to pay such estate taxes when due, and that such special administrators should therefore be surcharged in said amount. We agree, subject to some qualification as hereinafter set forth.

■ Although the question seems never to have been presented to this court before, the general rule is that a personal representative having assets of the estate in his hands is chargeable individually with interest or costs accruing because of his failure to pay at the proper time claims against the estate which it was his duty to pay. 34 C.J.S. Executors and Administrators § 472, p. 349. The rule stated in Goodknight v. Harper, 75 Colo. 141, 225 P. 215, is that an administrator is liable for interest on taxes and allowed claims which remain unpaid when ample money was available for payment. In this connection see also Wyckoff v. O'Neil, 71 N.J.Eq. 729, 71 A. 388; In re Slater's Estate, 88 N.J.Eq. 296, 102 A. 384; In re Macky's Estate, Colo., 213 P. 131; Cook v. Aronheim, 186 Md. 138, 46 A.2d 105; In re Connolly's Estate, 79 Mont. 445, 257 P. 418; In re Oakes' Estate, 127 Misc. 779, 217 N.Y.S. 638; In re Rodgers' Estate, 147 Misc. 344, 264 N.Y.S. 624; In re Bandler's Estate, 172 Misc. 433, 15 N.Y.S.2d 307; In re Griffith's Estate, 96 Pa.Super. 242. In In re Oakes' Estate, supra, it was held that the penalty for executor's non-payment of inheritance tax within the statutory period was chargeable against the executor personally, notwithstanding that the failure to make return thereof was the result of advice of counsel and not negligence. In the opinion in Cook v. Aronheim, supra [186 Md. 138, 46 A.2d 106], the Maryland court said:

"The order on the first exception struck from the administration account charges of $16.89 for interest due on the income tax for the year 1942; $30.41 for interest due on the income tax for the year 1943; and $49.53 as interest payment on the delayed federal estate tax return. The appellant states that he did not file the federal income tax returns for the years 1942 and 1943 until December 26, 1944. We see no reason why the estate should be penalized for the failure of the executor to file the income tax returns in time. The Orphans' Court was correct in disallowing these items which should be paid by the executor personally. In the testimony before us he fails to adequately explain why the interest was paid in the amount of $49.53, on the delayed federal tax return and therefore the Orphans' Court was correct in disallowing that item."

We find no cases to the contrary, although it was held in the case of In re Pettigrew's Estate, 115 N.J.Eq. 401, 171 A. 152, affirmed 116 N.J.Eq. 566, 174 A. 478, that an executor's account should not be surcharged with the amount of interest paid on taxes in absence of a showing that the executors had sufficient funds wherewith to pay taxes at any time before their actual payment. Such holding is, of course, in accord with the general rule already stated, and does not aid the special administrators' cause, because the evidence is uncontradicted in the case at bar that such special administrators had ample funds available with which to pay the estate taxes herein at the time they became due.

Defendants in error argue that the record will show that notwithstanding several applications filed by plaintiffs in error in the county court for an order directing the payment of the estate taxes, that the county court on May 28, 1954, entered an order in which it found that a determination of the full amount of such taxes could not at that time be made and determined until the Supreme Court of Oklahoma determined the ownership of the property which was then in litigation, and they then assert that it can readily be seen that if the Flora B. Barton estate did not own the real estate, that the bulk of the estate tax would have to be borne by the estate of Lucy H.

Hooker. We find no merit in this argument. Defendants in error appear to suggest by this argument that they were justified in not paying the estate taxes when due and in delaying the payment of all the amounts that they paid thereon until January 26, 1955, because they could not determine until after an opinion had been rendered on appeal in the cases of Hoskyns v. Hooker, supra, and Barton v. Hooker, supra, whether the property involved in those cases should be included in determining the amount of estate tax to be assessed against the estate of Flora B. Barton, deceased. Apparently the theory of defendants in error was that if they were successful in such litigation in recovering the property involved for the estate of Flora B. Barton, deceased, the value of the same would be properly included in determining the amount of estate tax assessed against such estate, but if they were unsuccessful in such litigation and did not recover the property that the value thereof would not be included in determining, for estate tax purposes, the value of the estate of Flora B. Barton, deceased. Such argument is untenable for numerous reasons. In the first place, the opinions of this court in Hoskyns v. Hooker, supra, and Barton v. Hooker, supra, were not handed down until March 22, 1955, at which time the estate taxes against the estate of Flora B. Barton, deceased, had already been assessed and the assessments had long since become final, and the amount eventually paid by the special administrators thereon had already been paid. The order of the county court of May 28, 1954, referred to by defendants in error as supporting their contention that the full amount of the taxes due could not be determined at that time, was obviously made under the provisions of 68 O.S.1951 § 989d, for the purpose of reducing the interest rate on the estate tax due the State of Oklahoma from 12% per annum to 6% per annum. We must note, however, that such order was not, as inferred by defendants in error, entered in response to plaintiffs' in error's application for an order requiring the payment of estate taxes, but was entered in response to defendants in error's own application for an order reducing the interest rate on such taxes. We feel compelled to notice, also, that on the same date, May 28, 1954, the same county court entered another order in which it found that the federal and state estate taxes had been assessed against the estate involved and ordered the special administrators to pay the same, which is certainly not consistent with their contention that they were justified in not paying the same.

■■ It should also be noted that the special administrators were not successful in recovering the property involved in the above mentioned cases, which have now become final, and if their theory that such property is therefore not properly taxable to the estate of Flora B. Barton, deceased, be correct, then they have placed themselves in the unenviable position of having allowed an improper assessment of taxes in a substantial amount to become final, which, it would appear to us, would render the special administrators liable to being surcharged not only with the interest on the taxes, but with the principal amount of the tax which had been improperly assessed against the estate as well. Fortunately for the special administrators, however, their theory with regard to the proper assessment of estate taxes is not correct. The property involved in the controversy in Barton v. Hooker, supra, consisted of two bank accounts and several United States Savings Bonds all standing in the name of Flora B. Barton and Tono L. Hooker, as joint tenants. By specific statutory provision (26 U.S.C.A. § 811(e), in the case of the federal estate tax, and 68 O.S.1951 § 989e, in case of the Oklahoma estate tax) the value of such property is required to be included in the estate of the decedent, for estate tax purposes, except such part of said property as may be shown to have originally belonged to the surviving joint tenant and never to have been acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth. Since there was never

any contention or any evidence that the surviving joint tenant, Tono L. Hooker, had ever originally owned any of such property or had ever furnished or given any consideration for any of such property, it is apparent that the full amount of such property was properly included in the estate of Flora B. Barton, for estate tax purposes, without regard to whether the special administrators or the surviving joint tenant should prevail in the controversy over the property. The property in controversy in the case of Hoskyns v. Hooker, supra, consisted of real property of the appraised value of approximately $186,000, which Flora B. Barton had conveyed during her lifetime by deed, without consideration, but which real property she had retained in her possession and under her control until the date of her death. Such property was likewise by specific provision of statute (26 U.S.C.A. § 811(c), in the case of the federal estate tax, and 68 O.S.1951 § 989e, in the case of the Oklahoma estate tax) required to be included in the estate of Flora B. Barton, deceased, for estate tax purposes, so that so far as the determination of the amount of estate tax due was concerned, it was immaterial whether the special administrators or the heirs of the grantee in the deeds in question prevailed in the litigation over the real property. Since the bulk of the property involved in the litigation above referred to was taxable, for estate tax purposes, to the estate of Flora B. Barton, deceased, regardless of the outcome of such litigation, the existence of such litigation furnishes no justification for the failure to pay the estate tax when due.

The only other contention made in behalf of the special administrators is to the effect that while the powers of an administrator or executor are general, the powers, duties and authority of special administrators are special, and limited to such as are defined by statute, or expressed in the order of appointment, or which they may from time to time receive for the purpose of more effectually preserving the estate entrusted to their charge; that the only authority or powers conferred upon these special administrators was to institute litigation to determine which one of two estates owned certain real property; that no other duties or authority were conferred upon them; that it seems rather improbable that the court ever informally ordered, orally or otherwise, that the special administrators pay the estate taxes; that it is apparent that the special administrators did all that they were authorized to do by their order of appointment and by orders of the court thereafter made and that there has been no dereliction of duty on their part.

■ It is true that the powers and duties of special administrators are special, and limited to such as are defined by statute or expressed in the order of appointment or which they may from time to time receive for the purpose of more effectually preserving the estate entrusted to their charge. Jersak v. Risen, 194 Okl. 423, 152 P.2d 374. It is also true that the powers and duties prescribed by statute are in substance to take the charge and management of the estate and preserve the same from damage, waste and injury, and for such and all other necessary purposes to commence and maintain or defend suits and other legal proceedings, as an administrator. 58 O.S.1951 § 215; Jersak v. Risen, supra. The assertion that the only authority or powers conferred upon these special administrators was to institute litigation to determine which one of two estates owned certain real property, is obviously erroneous as a matter of law. The assertion that the special administrators did all that they were authorized to do by order of their appointment and by orders of the court thereafter made and that there has been no dereliction of duty on their part is not supported by the record, and is in fact completely contradicted by the record. The record reveals that in October, 1953, a hearing was had before the county court with regard to the estate taxes. At the conclusion of such hearing the court ordered the special administrators to forthwith convert

into cash the government bonds and to pay upon the estate taxes all of the assets of the Flora B. Barton estate, except $20,000, which was to be held subject to the further order of the court. It is true that no formal order to such effect appears in the record, but a partial transcript of the hearing was introduced in evidence, and other testimony indicated that the order was made, but that the county judge who made the order died before a formal order was prepared and submitted for his signature. Defendants in error do not deny that such order was made, and we therefore regard the making of such order as having been sufficiently established. On April 6, 1954, the estate taxes still not having been paid, J. D. Hooker and Tono L. Hooker filed a motion to discharge the special administrators and appoint successors and to require payment of the estate taxes. A hearing was had upon this motion, and although no formal order appears in the record, the uncontradicted testimony is that at such hearing the county judge ordered the special administrators to pay the taxes at once and to hold back approximately $20,000 of the property on hand, stating that he was making no formal order at that time but would give the special administrators several weeks to do something before reconsidering this matter. On May 28, 1954, the county court made and entered a formal order, which was filed on June 3, 1954, directing the special administrators to sell and dispose of all the assets of the Barton estate in their possession and convert the same to cash, and from the proceeds thereof to withhold $20,000 subject to the order of the court for costs, expenses, etc., and to pay all the balance to the state and federal governments on the estate tax assessed against the Barton estate. It does not appear that the special administrators ever complied with this or either of the previous orders of the county court with regard to the payment of the estate taxes. On July 28, 1954, the county court, by formal order, directed the special administrators to convert the United States bonds to cash and to pay the proceeds thereof on the

estate tax assessed against the Barton estate. (The special administrators had previously been ordered to convert the U. S. bonds into cash in October, 1953, and on May 28, 1954, had been ordered to sell and dispose of all the assets in their possession.) The special administrators nevertheless did not convert such bonds to cash until October 5, 1954, and did not make any payment on the estate tax until January 26, 1955. On November 9, 1954, nothing still having been paid on the estate taxes, Tono L. Hooker and J. D. Hooker filed another motion to require the special administrators to pay the estate taxes. This was set for hearing on November 22, 1954, and although no formal order appears in the record, the uncontradicted testimony is to the effect that at such hearing the court again directed the special administrators to pay the estate taxes, calling their attention to the fact that they had been previously ordered formally to pay the same. On December 1, 1954, the county court, by formal order, directed payment of the United Federal Savings & Loan Association savings account in the amount of $6,855.34 and the Tulsa Federal Savings & Loan Association savings account in the amount of $7,736.56 to the special administrators and directed the special administrators to apply the same on the estate taxes assessed against the Barton estate. It does not appear that this order was ever complied with. In fact, the final account filed by the special administrators and the response of the special administrators to the objections filed to their final account, show that such special administrators never did take possession of the United Federal Savings & Loan Association savings account at all and that they did not close out the Tulsa Federal Savings & Loan savings account until January 27, 1955, and the proceeds of neither account was ever applied to the estate taxes. On December 23, 1954, the county court entered a formal order in which it found that the special administrators had on hand and in their possession, the sum of $81,989.86 in cash, $1,700 in real property and $605 in jewelry, making a total valuation of as-

sets in their possession of $84,294.86, and ordered the special administrators to retain $17,695.00 of the cash, and the real estate and jewelry of a total value of $2,305, in their possession, subject to the further order of the court, and to pay to the State of Oklahoma, the sum of $13,786.94 on the estate tax due the State of Oklahoma, and to pay to the Federal Government the sum of $50,507.92 on the federal estate tax. Over a month later, and on January 26, 1955, the special administrators finally paid to the State of Oklahoma, the sum of $13-786.94, as ordered, and paid to the Federal Government, the sum of $43,667.29, which was $6,840.63 less than the court had ordered them to pay to the Federal Government. It therefore appears that the special administrators have never yet fully complied with the orders of the county court with regard to the payment of the estate taxes, and that such compliance as has been had was long delayed. In view of the foregoing, we find no merit in the assertion that the special administrators did all that they were authorized to do by the orders of the court.

■ It appears that the pertinent provisions of the federal and state statutes make the estate tax the personal liability of the personal representative of the estate of the decedent. 68 O.S.1951 § 989i; 26 U.S.C.A. §§ 822, 825 and 930. The special administrators herein were the personal representatives of the estate of Flora B. Barton, and the only such personal representatives, from June 6, 1950, until August 2, 1955, during which time the federal and state estate taxes both became due and payable. Both the federal and the state statutes provide for a procedure by which the special administrators could have relieved themselves of the personal liability for the estate taxes due, but the special administrators apparently did not see fit to avail themselves of such procedure. It is the statutory duty of the special administrators to take charge of the estate and preserve the same from waste or loss. When the special administrators took charge of the es-

tate, the value of the known assets was more than the amount of indebtedness against the estate. When the special administrators turned over the estate after some 5 years of control, the indebtedness against the estate far exceeded the value of the assets remaining in the estate, due almost entirely to the additional interest assessed against the estate because of the failure to pay the estate taxes when due. In brief, the estate was solvent when the special administrators took over, and when they returned it it was insolvent. Under such circumstances we cannot say that they have preserved the estate. While it is true that the authority of the special administrators is somewhat limited, and that they were at all times subject to the authority of the county court, it is also true that it was their statutory duty to conserve the estate and protect the same from loss. When the estate taxes became due and payable, it became the duty of the special administrators to act. They should have applied to the county court for instructions, and had they done so and had the county court ordered the special administrators not to pay such estate taxes, then they could not have been surcharged with the interest resulting from the failure to pay the same when due. The special administrators made no such application, however, and in fact took no action whatsoever to conserve the estate. When other parties filed applications for orders requiring the special administrators to pay the tax, which was done on several occasions, the special administrators vigorously opposed such applications. Even so, the court never did enter an order directing the special administrators not to pay the estate taxes, but on the contrary, finally, some time in October, 1953, entered an order directing them to pay such taxes, withholding only the sum of $20,000 from the assets on hand in the estate. It also appears that any delay in the making of such order was occasioned solely by the actions of the special administrators, and not by the court or the actions of any of the other parties.

Under such circumstances, we are of the opinion, and hold, that the special administrators should be surcharged with the full amount of the interest accruing upon the estate taxes from the date they were due until the date the court ordered them to apply all but $20,000 of the assets of the estate upon the payment of such taxes, and should be surcharged with the difference between the amount of interest that has accrued on such estate taxes since the entry of such order and the amount of such interest that would have accrued since such date had the special administrators complied with such order forthwith. Since the record before us does not disclose the exact date of the order of the county court made in October, 1953, directing the special administrators to pay the estate taxes but authorizing them to withhold from such payment the amount of $20,000, and we cannot determine the exact amount of interest with which the special administrators should be surcharged, the judgment appealed from is reversed and the cause remanded with instructions to the trial court to determine such date and such amounts in accordance with the views hereinabove expressed and to surcharge the special administrators accordingly, subject, of course, to such offsets as the special administrators may show themselves entitled by virtue of interest earned by the assets of the estate after the date the estate taxes were due which would not have been earned had such assets been converted to cash and applied to the payments of the estate taxes, and, in the discretion of the court, by virtue of the fee allowed or which court may determine should have been allowed the special administrators.

Affirmed as to attorneys' fees and reversed with directions to hear the matter on the question of surcharge as against the special administrators only.

CORN, V. C. J., and DAVISON, HALLEY, BLACKBIRD, JACKSON and CARLILE, JJ., concur