## O'Doherty & Yonts, et al. v. Bickel, et al.

(Decided November 16, 1915.)

### Appeal from Jefferson Circuit Court.
### (Chancery Branch No. 1).

Attorney and Client—Compensation.—A number of persons had similar claims against a bank for alleged breach of contract. Three of them brought suits against the bank thereon. After these suits had progressed to a point where a recovery seemed likely, other claimants intervened, being represented by attorneys of their own selection. The bank compromised the claims of all. The attorneys for the three plaintiffs who instituted the original suits claimed a fee off of those who later intervened. Held, they were not entitled thereto although the intervening claimants received in a sense the benefits of the services performed by the attorneys in question, in behalf of their own clients.

A. P. DODD, J. C. DODD and O'DOHERTY & YONTS for appellants.

TRABUE, DOOLAN & COX for appellees, Newman, et al.

W. PRATT DALE for appellees, C. C. Bickel, et al.

T. K. HELM and HELM & HELM for appellee, Clark.

PERCY N. BOOTH for appellee, E. W. Abrams.

OPINION OF THE COURT BY JUDGE HANNAH.—Affirming.

During the year 1909, the First National Bank, of Louisville, was found to be in a precarious condition in respect of its solvency, and the owners of 2,914 of its

shares of capital stock constituted and appointed the Fidelity Trust Company their attorney-in-fact to make a sale of their holdings.

On September 4, 1909, the Fidelity Trust Company, as such attorney-in-fact, entered into a written contract for the sale of the shares mentioned with the Kentucky Title Savings Bank & Trust Company, which contract provided for an absolute payment of $40 per share, and stipulated for certain additional payments to be made upon certain contingencies connected with the amount that might be realized from the assets of the defunct bank, the exact details of. which are complicated and not here necessary to be dwelt upon.

The purchasing bank paid the $40 per share, took over the assets of the First National Bank and proceeded to a liquidation thereof; but declined to make any further payments to the selling shareholders, its contention being that upon a proper interpretation of its contract with their attorney-in-fact, nothing more was due.

Three of the shareholders, E. H. Ferguson, Miss Nellie Peter and C. C. McClarty, thereupon employed counsel in the person of Messrs. O'Doherty & Yonts and J. C. Dodd, for the purpose of enforcing further payments upon their shares so sold. A meeting of all the shareholders who had deposited their shares with the Fidelity Trust Company was called, at which the other shareholders were given an opportunity to employ the counsel mentioned; but none of the other shareholders availed themselves of this privilege; some of them had personal counsel under whose advice they were proceeding.

In April, 1912, the three shareholders heretofore named each filed a separate suit in the Jefferson Circuit Court against the purchasing bank to obtain further payments on the shares sold by them, the suits being prosecuted by O'Doherty & Yonts and J. C. Dodd, under an agreement for a contingent fee equal to one-third of any recovery had therein.

After these suits had progressed for some months, it seemed likely from the rulings of the chancellor that a recovery would eventually be had of some further payments upon the shares so sold; and on March 20, 1913, appellee, Abrams, became a party thereto by intervention. He was claiming 32 of the 653 shares which had been pooled by C. C. McClarty, the plaintiff, in one of

the actions mentioned, and was represented by Percy N. Booth.

Later, on April 17, 1913, C. C. Bickel, who owned in his own right 602 shares in the pool and also owned jointly with said E. H. Ferguson 544 shares (none of which, however, were set up by Ferguson in his action), also became a party by intervention, suing on all of said shares. He was represented by W. Pratt Dale.

On May 27, 1913, an order was entered permitting the plaintiff, Miss Nellie Peter, to prosecute said actions for and on behalf of all the shareholders, presumably upon the assumption that section 25 of the Civil Code authorized such privilege.

On May 29, 1913, as the result of negotiations which had been pending for some days, the purchasing bank paid to the Fidelity Trust Company the sum of $45,000 to await the acceptance thereof by all the pooling shareholders, this sum being tendered in full settlement of all of their claims.

On June 5, 1913, Jas. Clark, Jr., one of the pooling shareholders, applied for and obtained the rescission of the order of May 27, 1913, permitting Miss Peter to sue for all the shareholders, in so far as that order affected him, and he became a party by intervention. He was represented by T. K. Helm.

On the same day, the same proceedings were had by H. P. Lewman, J. B. Lewman and W. N. Cox, executors of G. W. Lewman, H. P. Lewman, J. B. Lewman, W. N. Cox and Josephine L. Cox, and they became parties by intervention, being represented by Trabue, Doolan & Cox.

By July 16, 1913, the acceptance, by all the pooling shareholders, of the $45,000 tendered in full satisfaction of their claims, had been obtained.

It appears, however, that on June 2, 1913, Attorneys O'Doherty & Yonts and J. C. Dodd had written to each of the pooling shareholders informing them of the offer of $45,000 in satisfaction of the claims of all such shareholders, and notifying them that in the event of an acceptance of this offer, each of such shareholders would be expected to pay to them a fee equal to one-third of the recovery, the same as that agreed upon by the three plaintiffs in the actions heretofore mentioned. When the consent of all the shareholders to the settlement had been obtained, there remained only this dispute be-

tween the attorneys for the plaintiffs in the original actions mentioned, and Bickel, Abrams, Clark and the Lewmans (who had been represented by other attorneys when they became parties by intervention), as to whether any sum was due from them to the said attorneys, O'Doherty, Yonts and Dodd. In order to expedite the settlement it was finally agreed that the shareholders mentioned should permit one-third of the sums due to them to be paid into court pending an adjudication of this dispute as to fees.

The three actions mentioned were then consolidated and proceeded only upon the issue as to the right of the attorneys mentioned to claim a fee from those shareholders who had intervened and who had employed attorneys of their own. The chancellor upon the trial refused to adjudge to O'Doherty & Yonts and J. C. Dodd any fee as against those shareholders, and the attorneys appeal from that judgment.

1. The general rule in this State is that an attorney cannot recover fees for his services from one who has not employed him or authorized his employment, although the services may have been beneficial to such person.

In Savings Bank of Cincinnati v. Benton, 2 Met.; 240, Benton was employed by a defendant, Sandford, to represent him and his co-defendant, the Savings Bank of Cincinnati. The bank had its own counsel. In an action by Benton against the bank to recover compensation for his services the plaintiff obtained a verdict, and this court in reversing the judgment said:

"If it (the bank) had counsel of its own employed and the plaintiff had not been employed by it, but had been employed only by Sandford, and the bank, through its president, knew of that employment, then, although the plaintiff's services may have been beneficial to the bank, and received and accepted by it, yet it would not thereby incur any liability to pay for them. To impose such liability upon it under the circumstances of the case, it must have been apprised that it was looked to by the plaintiff for compensation for his services and afterwards received them without informing him that it would not pay for them."

Of course this general rule is subject to the qualification that the acceptance of or acquiescence in the services rendered, may raise an implied promise to pay therefor.

Thus, in Patterson v. Fleenor, 89 S. W., 705, 28 R., 582, Patterson had employed one Gillum as his attorney in an action involving the title to land. Fleenor was a partner of Gillum at the inception of that litigation or became such soon after, and Gillum while it was pending removed to another State. Fleenor continued to conduct the case, with the knowledge and consent of Patterson. This court held that under these circumstances, an agreement on the part of Patterson to pay for the services so rendered would be implied.

To the same effect is Crawford v. Wiedemann, 158 Ky., 333, 164 S. W., 981, wherein this court said:

"Acquiescence by the client in the attorney's conduct may supply the place of a request to act, provided the case is such that the client might reasonably know that he would be expected to pay for the work; and the same would be true if the client by his acts induced the attorney to believe that his services were desired. 4 Cyc., 985."

It must be apparent, however, that under the spirit of the rules stated, the acquiescence which would raise an implied promise must be such as presumes volition upon the part of the person sought to be charged with the duty of compensating the attorney. It will not do to say that where the circumstances are such that one has no choice but to avail himself of efforts which have been made by an attorney, this would constitute acquiescence.

In the case at bar, the pooling shareholders were offered an opportunity to avail themselves of the services of appellants, and they declined the offer. The appellants then proceeded with the actions on behalf of the three shareholders who did employ them. The nature of those actions was such that their success must of necessity be of some benefit to the other pooling shareholders. If they were successful, their success would naturally redound to the benefit of the other shareholders, who had like claims against the purchasing bank should they care to assert them. If the three actions mentioned had proceeded to a judgment in favor of the plaintiffs, of course there would have been little, if any, incentive for the purchasing bank to have compelled the remaining shareholders to resort to the courts in order to obtain their rights under the contract in question. Yet had such been the course of events in respect of the three ac-

tions mentioned, if the remaining shareholders were to settle at all with the purchasing bank, in doing so they must have, in a sense, availed themselves of benefits resulting from the successful presentation by appellants of the cases in which they were employed by the three suing shareholders. That, however, would not constitute the acquiescence in the conduct or acceptance of an attorney's services such as raises a duty to pay therefor by implication of law. It would not be accepting services rendered for them, but rather availing themselves of the benefits of services which had been rendered to and paid for by others. Nor was there any exercise of voluntary choice in the matter, for if the remaining shareholders were ever to effect any settlement of their claims with the purchasing bank, they must of necessity have profited in a way by the efforts of the attorneys employed by the three suing shareholders.

It is not claimed by the appellants that they had any contract with or employment from the appellees; but it is contended that because the appellees agreed to and effected the compromise offered by the purchasing bank, after appellees had been notified that appellants would look to them for a fee in that event, there was such an acceptance of their services as would operate to create legal liability by implication of law. But what services did appellants perform for appellees? None at all, as we view it, for which the law imposes liability.

The appellants had been employed by and had brought three suits for three of the pooling shareholders, appellees not being parties thereto. The services performed by them in those cases they were in duty bound to perform, under the employment which they accepted. They were not employed by appellees, and they performed no services for appellees.

If the three actions mentioned had proceeded to judgment favorable to the plaintiffs therein, and the purchasing bank had thereafter settled with the remaining shareholders, would appellants here contend that they were entitled to a fee of one-third of the sums so paid to the remaining shareholders?

It may be conceded that as an incidental result of the efforts of appellants upon behalf of their clients (the plaintiffs in the three original actions), the purchasing bank was led to a desire to settle with all of the pooling shareholders; but the benefits derived by appellees in

that respect were only incidental benefits which of necessity flowed from the performance by appellants of the services which they were by their clients employed to perform and which they were in duty bound to perform for them; and for such benefits they cannot claim compensation from appellees who were not their clients either by express contract or implication of law. Hand v. Savannah Ry. Co., 21 S. C., 162; Rives v. Patty, 74 Miss., 381, 20 So., 862, 60 A. S. R., 510. As well might it be contended that the attorney who obtains the enunciation of a new doctrine of the law should have compensation from all who are thereafter in virtue of that doctrine victorious in the courts.

In Pepper v. Pepper, 98 S. W., 1039, 30 R., 480, the following state of facts is found: Certain attorneys were employed by some of the heirs of one W. B. Pepper and succeeded in recovering several thousand dollars for the estate. One of the heirs received the benefit of one-third of the sum so recovered; he had not employed any attorney to represent him in the litigation. Those who had employed the attorneys paid the agreed compensation, and the attorneys then sought to recover an additional fee from the heir who had not employed them; and this court held that they could not maintain an action against a person who was not their client, and with whom they had no agreement, either express or implied.

This latter case may also be referred to as demonstrating conclusively the inapplicability of section 489, Kentucky Statutes, to the state of facts here shown. It was explained in that case that the section mentioned applies where one party in interest recovers a fund which necessarily inures to the benefit of others jointly interested therein, the statute effecting a sort of contribution among them to the end that all persons jointly interested in and benefited by the recovery shall bear their proportion of the expenses incurred in securing the benefits thereof. See also Clark v. Pepper's Admr., 132 Ky., 192, 116 S. W., 353.

But, in the case at bar, we have simply three plaintiffs suing a defendant against whom other persons have similar claims. The defendant compromises with all of them; and the attorneys for the plaintiffs first suing seek a fee from those claimants who were not their clients, but who were in point of fact represented by other attorneys. It may be that those claimants who did not sue

originally (but who came in later by intervention) were benefited by the services performed by the attorneys whom the plaintiffs had employed; but there was no legal liability thereby created.

Much has been made to appear in the record tending to show that certain of the claimants who did not sue had such relations with the plaintiffs, or some of them, as would have rendered the employment of a common attorney injudicious; and much has been said concerning the fact that the appellees who did not sue were nevertheless availing themselves of the constant advice of other attorneys than appellants during the course of the matters in question; but we have not found it necessary to consider or discuss these contentions in detail, in view of the conclusions which we have reached, as hereinbefore stated. Be these matters as they may, appellees are not liable to appellants for compensation under the facts disclosed by the record and here conceded.

The judgment is affirmed.