LOUISVILLE AND JEFFERSON COUNTY METROPOLITAN SEWER DISTRICT, Plaintiff-Appellee,

v.

The TRAVELERS INSURANCE COMPANY, Defendant-Appellant.

No. 84–5195.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1984.

Decided Feb. 4, 1985.

Henry A. Triplett (argued), Bennett, Bowman, Triplett & Vittitow, Louisville, Ky., for defendant-appellant.

John S. Reed (argued), Hartwell P. Morse III, Greenebaum, Doll & McDonald, Robert W. Keats, General Counsel, Louisville & Jefferson Co. MSD, Louisville, Ky., for plaintiff-appellee.

Before LIVELY, Chief Judge, WELLFORD, Circuit Judge; and ROSENN, Senior Circuit Judge.*

LIVELY, Chief Judge.

This diversity case involves two distinct issues, one relating to insurance coverage and the other concerning the proper application of the equitable principles underlying the doctrine of unjust enrichment. The insurance question is whether property damage caused by the unlawful act of a third person having no proven animosity against the insured property owner is covered by a "vandalism and malicious mischief" provision in the owner's insurance policy. If coverage is found to exist, the remaining question is whether the property owner, who recovers part of the loss from one or more tort-feasors after the insurance company denies liability, is entitled to recoup from the insurer a proportionate part of the expenses of the recovery. The district court found in favor of the property owner on both issues, and we affirm.

## I.

The Louisville and Jefferson County Metropolitan Sewer District (MSD) is a political subdivision of the Commonwealth of Kentucky which is responsible for providing comprehensive wastewater treatment and disposal services for Jefferson County, Kentucky. It maintains and operates a network of sewer lines throughout the county which collects and conducts wastewater to its treatment plant near the Ohio River. In 1977 MSD carried property insurance on the primary treatment area of the treatment plant with the defendant Travelers Insurance Company (Travelers). The policy included coverage described as follows:

> The travelers insures, except as otherwise provided, against direct loss by: vandalism and malicious mischief, meaning only direct loss by willful and malicious damage to or destruction of proper-

* The Honorable Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the   Third Circuit, sitting by designation.

ty, but excluding any loss: (a) to glass (other than glass building blocks) constituting a part of a building and to signs outside a building; or (b) by pilfering, theft, burglary or larceny, except for willful damage to a building caused by burglars.

In early 1979, on one or more occasions, Donald Distler caused large quantities of toxic waste materials to be introduced into the sewer system by dumping the waste through a manhole located on Lewis Avenue in Louisville. The waste involved was PCL bottoms, a byproduct waste resulting from the production of a chlorinated compound commonly called "hexa," which is used in pesticide and flame retardant resin manufacturing. At that time, Velsicol Chemical Corporation, at its plant in Memphis, Tennessee, was the only manufacturer of hexa in the United States, and Distler, acting through his corporation Kentucky Liquid Recycling, Inc. (KLR) was under contract to store their waste while completing work on a liquid waste incinerator, and then to incinerate the waste. Distler was convicted after a jury trial of two violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq., as a result of the hexa waste polluting the Ohio River and causing interference with the operation of MSD's treatment plant. *United States v. Distler*, 671 F.2d 954 (6th Cir.1981). This court's opinion describes the toxic waste, its effect on the MSD sewer system, and the investigation which led to Distler's arrest and conviction. *Distler*, supra at 955–57. For purposes of this case, it is sufficient to note that this highly toxic waste flowed through the sewer system to the treatment plant, where it caused severe damage. It was stipulated that the cost to repair and clean up the primary treatment area was $299,669. MSD filed a claim for this amount with Travelers. When Travelers denied coverage, MSD filed suit in a state court and Travelers removed to the district court. Meanwhile, MSD sought recovery from Velsicol, the manufacturer of the chemicals, and others involved in handling them. The damage to the primary treatment area was a small part of the total damage to the system.

Before the removed case against Travelers came to trial, MSD settled with Velsicol and the other handlers of the toxic material for 97.7% of its total claim. One effect of this settlement was to reduce Travelers' potential liability under the policy from $299,669 to $6,892, since MSD could not recover twice for damage to the primary treatment area. However, MSD incurred substantial litigation expenses, primarily legal fees, in pursuing its claim against the Velsicol defendants. It was stipulated that the pro rata share of these expenses allocable to the recovery for damages to the primary treatment area was $104,628. MSD then reduced its claim against Travelers for damage to the insured property from $299,669 to $6,892, but sought in addition to recover $104,628 on the theory that the expenditures in the proceedings against the Velsicol defendants benefited Travelers by reducing its liability, and Travelers would be unjustly enriched by this reduction if not required to pay its proportionate share of the expenses.

## II.

The case was submitted to the district court on cross-motions for summary judgment and a set of stipulations. MSD also filed affidavits in support of its motion for summary judgment. The parties stipulated that the dumping of toxic chemical waste into the sewer system violated both state and federal law and that the material dumped by Distler caused damage to the primary treatment area. Uncontradicted affidavits established that a cover weighing 128 pounds had to be removed from the manhole before the waste materials could be dumped into it. The affidavits also showed that the manhole had been filled with sand and dirt, apparently from a nearby construction site, and that the heaviest concentration of hexa residue was found beneath this fill material. A technical supervisor for the eight-state Region IV of the Environmental Protection Agency (EPA) stated by affidavit that the concen-

tration of hexa in the vicinity of the manhole was among the highest he had experienced in over ten years. The Chief of Water Surveillance Branch of EPA Region IV stated in an affidavit that the heavy concentration in the area of the manhole indicated that it did not result from either an accidental spill or a normal industrial discharge.

The parties agreed that the substantive law of Kentucky applies. The district court found *State Auto Mutual Insurance Co. v. Trautwein*, 414 S.W.2d 587 (Ky. 1967), controlling on the issue of coverage. In *Trautwein* the Kentucky Court of Appeals (then the state's highest court) held that property damage caused by the unlawful removal of fixtures from a building was within the "vandalism and malicious mischief" coverage of an insurance policy. The requisite malice may be presumed from the unlawful act itself and no proof of personal animosity of the predator against the property owner is required.

Turning to the second issue, the district court recognized the fact that Kentucky adheres to the "American Rule" which does not permit a winning litigant to recover attorney fees from the loser in the absence of an agreement or a statute providing for such recovery. However, the court also determined that a series of Kentucky decisions have applied equitable principles "to prevent one from obtaining without cost the fruits of an attorney's labor." (Quoting *Stacy v. Noble*, 361 S.W.2d 285, 289 (Ky.1962)). Concluding that Travelers would be unjustly enriched if permitted to benefit from reduction of its liability through MSD's efforts without paying its share of the expenses incident to that reduction, the court granted summary judgment on MSD's second claim.

Travelers appeals from the judgment which awarded MSD $6,892 as its unrecouped damages and $104,682 as the stipulated portion of litigation expenses incurred by MSD in prosecuting its damage claim against the Velsicol defendants.

## III.

### A.

Travelers does not contend that the existence of material issues of fact made summary judgment improper. It maintains that the district court erred as a matter of law. Travelers argues that the language of the policy does not afford coverage because the damage to the primary treatment area was not "immediate or expected." Travelers points out that in *Trautwein* the damage to the insured building occurred as thieves were removing air conditioners from the walls. The air conditioners were installed in such a manner that their removal necessarily damaged the building. Thus the damage occurred immediately, as the intruders were in the act of stealing the air conditioners, and damage to the building was an obvious consequence. In the present case, damage to the primary treatment area occurred some days after the dumping took place, as it took time for the toxic waste to move through the sewer system to the treatment plant, which was more than three miles away, and to build up to damaging levels there. From these facts Travelers argues that the damage was too remote in time and place to be considered the result of vandalism or malicious mischief.

While conceding that "vandalism" is no longer confined to its original meaning of the "willful or ignorant destruction of artistic or literary treasures," Travelers maintains that the essence of vandalism within the policy language is that the damage be immediate and expected. Travelers also asserts that there is no evidence of a willful intent to damage the sewer plant. Willful intent, it argues, is an essential element of malicious mischief. Travelers distinguishes *Trautwein* factually on the basis of the immediacy and obviousness of the damage, and contends that the statement of the court of appeals that malice could be presumed from the unlawful act was dictum.

With respect to the second issue, Travelers states that the Kentucky cases which have permitted a claimant to recover from

an insurer a portion of litigation expenses incurred by the claimant in obtaining damages from third parties are limited to true subrogation situations. Since Travelers never paid MSD's claim it had no right of subrogation against the Velsicol defendants. MSD acted only for itself in pursuing the Velsicol claim and Travelers had no control over the litigation and no input into any agreement between MSD and its counsel. Finally, Travelers argues that the American Rule on attorney fees, as followed by the Kentucky courts, prohibits recovery by MSD on this claim.

### B.

MSD asserts that the language of the insurance policy in *Trautwein* and the one in the present case are virtually identical in describing the vandalism and malicious mischief coverage. The *Trautwein* opinion does not mention an "immediate" or "expected" requirement and there is no Kentucky case which establishes these requirements for a finding of vandalism coverage. With respect to malicious mischief, MSD argues that *Trautwein* completely refutes Travelers' argument. The court in *Trautwein* stated that no showing of animosity against the owner of damaged property is required and that the necessary malice can be presumed from the unlawful act itself. It was stipulated that the act of dumping the toxic substances into the sewer system was unlawful. Further, the facts surrounding that act conclusively show that it was done willfully. MSD refers to the heavy manhole cover and the attempt to conceal the substances with sand and dirt as unrebutted evidence that the dumping was done intentionally. The fact that the damage occurred some distance from the point of the dumping is immaterial according to MSD. The dumping was the direct cause of the damage to the primary treatment area because once introduced into the comprehensive MSD system the toxic materials moved inevitably to the treatment plant. No outside force was required; this movement was a function of the system's design. Further, the toxic materials themselves caused the damage; it was not necessary that they be mixed with or react to any other materials in order to become a deleterious substance.

On the second issue MSD cites *Security Insurance Co. of Hartford v. Norris*, 439 S.W.2d 68 (Ky.1969), as establishing the Kentucky rule that one who benefits as Travelers did from the efforts of another is required "on principles of equity, fairness and justice" to bear his proportionate share of expenses incurred in achieving the beneficial result. MSD also agrees with the district court that the American Rule on attorney fees is not involved, since it is attorney fees incurred in a prior legal action, not those incurred in the present litigation, which it seeks to recover.

### IV.

■ We agree with the district court and MSD that *Trautwein* is dispositive of the coverage issue. The insurance policy itself defines vandalism and malicious mischief as "meaning only direct loss by willful and malicious damage to or destruction of property." There is no requirement that the loss be "immediate" or "expected," and no Kentucky case has so defined vandalism. The loss was direct because there was no intervening act or agency; the toxic waste moved in the normal operation of the sewer system from the manhole to the treatment plant. With respect to the requirement of malice, *Trautwein* unequivocally holds that "it would be unreasonable to require that some particular personal animosity of the unknown predators against the owner be proven to exist before recovery could be had on the policy." 414 S.W.2d at 589. As the district court observed, there can be no dispute that Distler acted willfully. He was familiar with the dangerous properties of hexa. In order to dump the materials into the sewer system it was necessary to remove a 128-pound manhole cover which provided security to the sewer lines. Finally, the attempt to conceal the location of the source of the toxic materials by filling the manhole with sand and dirt adds strength to the inference that Distler willfully performed this admittedly unlawful

act. While the statute under which Distler was prosecuted permitted conviction for either a willful or a negligent violation, the uncontradicted evidence in this case rules out any argument that he acted negligently.

Taken literally, *Trautwein* holds that an unlawful act is all that needs to be proven: "malice may be presumed from the unlawful act itself." *Id.* Immediately before making the quoted statement the Kentucky Court of Appeals noted that the air conditioners were affixed in such a way that they could only be removed by applying considerable force resulting in probable damage to sleeves attaching them to the walls, and to the walls themselves. If this observation may be taken to limit application of the presumption to cases where it must be evident to the wrongdoer that his unlawful act will result in damage to property, that condition is met in the present case. Distler willfully performed an illegal act under conditions where it was manifest that damage would result.

Travelers has cited decisions from other jurisdictions which view policy language creating coverage for vandalism and malicious mischief differently. Since Kentucky law applies to this case there is no reason to discuss these decisions extensively. Kentucky does not stand alone in its treatment of the coverage question, however. Though some courts require proof of personal animosity to establish malice, that appears to be the minority view. The Supreme Court of South Carolina recently cited *Trautwein* and an Illinois case for the proposition that malice may be inferred from the unlawful act itself. *King v. North River Insurance Co.*, 278 S.C. 411, 297 S.E.2d 637, 638 (1982). The court went on to observe, "to hold otherwise would in many instances defeat the purpose of insuring against vandalism, as vandals rarely destroy property in the open view of witnesses." *Id.* The Supreme Court of Oregon stressed the "likelihood of some damage" in *Hatley v. Truck Insurance Exchange*, 261 Or. 606, 494 P.2d 426, 432 (1972). The Oregon court stated, "[w]e think property has been damaged 'willfully and maliciously' if the damage results from an intentional act from which damage manifestly would or could result." *Id.* at 431. There can be no doubt that the evidence in this case established an intentional act from which damage "manifestly" could or would result.

Many courts have rejected the contention that there must be direct evidence of an intention to damage property. Where a deliberate act is required to bring about the damage, proving the act provides sufficient evidence of a deliberate intention to inflict the damage. Intent to damage the property can be presumed from circumstantial evidence of a deliberate act which ordinarily would cause such damage. *Lanza Enterprises, Inc. v. Continental Insurance Co.*, 142 So.2d 580 (La.App.1962). Circumstantial evidence similar in some respects to that adduced in the present case supported a finding of loss from vandalism and malicious mischief in *Cole v. County Mutual Insurance Co.*, 5 Ill.App.3d 335, 282 N.E.2d 216 (1972). There someone pulled a master switch mounted on a pole which required considerable force to cut off electricity to a group of farm buildings. When the power went off, fans mounted in several of the buildings shut down and a large number of hogs suffocated. Finding that the evidence ruled out an accidental pulling of the switch, the court stated:

> The evidence proves a willful, intended act by a human agency. Circumstantial evidence which gives rise to a reasonable inference is present here sufficient to sustain the trial court's findings that vandalism and malicious mischief caused the damage to the plaintiffs.

Based on the entire record we conclude that the district court properly granted summary judgment in favor of MSD on the first issue.

## V.

Travelers argues that *O'Doherty & Yonts v. Bickel*, 166 Ky. 708, 179 S.W. 848 (Ky.1915), is dispositive of the claim by MSD for a proportionate share of its litiga-

tion expenses in pursuing claims against the Velsicol defendants. We disagree. In *O'Doherty*, three shareholders of a troubled bank employed the O'Doherty law firm to represent them in a controversy over the value of their stock. The law firm wrote other similarly situated shareholders, advising them of a proposed settlement which required acceptance by all shareholders and stating that the law firm would expect each shareholder to pay a contingent fee if settlement was reached. Bickel and several other shareholders refused the law firm's offer, but intervened in the action, represented by their own counsel. The action was settled on the terms proposed. The O'Doherty law firm sued to collect a one-third contingent fee from the intervenors, the percentage agreed to by its clients. The court denied recovery, holding that an attorney may not recover fees for services from persons who have not employed him or authorized his employment although they may have benefited from his services.

The differences between *O'Doherty* and the present case are obvious. In *O'Doherty* the attorneys were suing non-clients to collect fees which the defendants had not agreed to pay them. In the present case MSD paid the fee of their attorneys in full, and the attorneys are not parties to this action. Further, in *O'Doherty* the other shareholders had not contractual relationship with the law firm or the three shareholders who employed it. In this case, MSD paid premiums to Travelers under a contract of insurance. By the time Travelers' coverage had been established by the district court, MSD had taken steps against third-party tort-feasors and obtained a settlement which greatly reduced Travelers' liability under its insurance agreement. We view *O'Doherty* as a case where attorneys attempted to force their services on unwilling parties and then to collect for those services after the parties had rejected them. Here, there is a contractual relationship between the parties which imposes duties and responsibilities on each.

Travelers' reliance on the American Rule is also misplaced. The issue is not who will pay the attorney fees incurred in the present action. Under settled law, each party will pay its own fees because there is no statute or contractual arrangement which permits one party to collect the expenses of this litigation, other than taxable costs, from the other. See *Lyon v. Whitsell*, 245 S.W.2d 926 (Ky.1952) ("As a general rule, in the absence of contractual or statutory liability, attorneys' fees are not recoverable as an item of damages."). What MSD seeks is a fair share of the expenses it incurred in different litigation which resulted in a clear and measurable benefit to Travelers. In this situation we agree with the district court and MSD that Kentucky cases applying equitable principles control.

In *Stacy v. Noble*, 361 S.W.2d 285 (Ky. 1962), an employee was injured by the negligence of a third party while at work. He settled with his employer's workers' compensation insurance carrier and sued the third-party tort-feasor. In the negligence action the employee recovered less than the amount of his compensation settlement and the compensation insurance carrier claimed the entire recovery pursuant to its right of subrogation. The employee contended he was entitled to withhold from the insurer the amount of the contingent fee he had agreed to pay his attorney in the negligence action. The court upheld this position, stating that when the employee's attorney bears the burden of recovery from third parties, whoever eventually takes that recovery is chargeable with a share of the fee.

A case very close in principle to the present one is *Security Insurance Co. of Hartford v. Norris*, 439 S.W.2d 68 (Ky. 1969). There the widow of an employee who was fatally injured by a third person while on the job settled with the employer's workers' compensation insurer. The settlement required future periodic payments in addition to a lump sum. When the widow recovered from the third party, the insurer agreed to reduce its subrogation claim by the proportionate part of the widow's legal expenses which related to the amount it

had already paid under the settlement. However, it would not agree to a charge for the portion of her expenses related to future payments under the compensation settlement, even though the negligence recovery wiped out the insurer's liability for future payments. The court noted that no statute requires a compensation carrier to share an employee's expenses of recovering from a third-party tort-feasor. However, the court concluded that previous decisions had required such sharing "on principles of equity, fairness and justice, such as are invoked in cases of unjust enrichment." *Id.* at 70. The court found the insurer liable for the widow's expenses proportionate to the amount of its obligation for future payments.

■ Travelers argues that these decisions are not applicable since they involved subrogation. We find this contention unpersuasive. Travelers could have paid the MSD claim and then sued the Velsicol defendants as subrogee. It should not benefit from denying liability and requiring MSD to pursue the claim against negligent third parties. It had the right to contest coverage in good faith, but once its liability was established, equity required it to pay its share of the cost of the third-party recovery which redounded to its benefit. To hold otherwise would permit insurers to deny the indemnification which they have contracted to provide and force their insureds to seek recovery for damages from third parties. Having accepted premiums and agreed to insure property, when that property is damaged by acts of third persons the carrier is required to pay to the extent of its coverage and seek recovery over against others who may be liable. It cannot avoid its primary obligation of indemnity and require its insured to seek damages from a third party. If it wrongfully denies coverage, even in good faith, it must pay its proper share of expenses reasonably incurred by the insured in recovering from a third party when the benefits of the recovery also inure to the insurer.

### CONCLUSION

■ There is a surprising dearth of Kentucky law construing the familiar vandalism and malicious mischief clause in property insurance policies. Likewise, there are some semantical problems at least in the opinions dealing with the right to recover litigation expenses. However, the experienced district judge who heard and decided this case, himself a former state judge in Kentucky, found support for his decision on both issues in Kentucky cases. In this situation we follow the rule enunciated by Judge Shackelford Miller, Jr. in *Rudd-Melikian, Inc. v. Merritt,* 282 F.2d 924, 929 (6th Cir.1960):

> But the rule appears well settled that in diversity cases, where the local law is uncertain under state court rulings, if a federal district court judge has reached a permissible conclusion upon a question of local law, the Court of Appeals should not reverse, even though it may think the law should be otherwise. As said in a number of cases, the Court of Appeals should accept the considered view of the District Judge.

(Citations omitted).

The judgment of the district court is affirmed.