Rodger W. LOFTON, Appellant,

v.

**FAIRMONT SPECIALTY INSURANCE MANAGERS, INC., d/b/a Fairmont Specialty Group and d/b/a Fairmont Specialty P & C; Denise Maxey and Delbert K. Pruitt, Appellees.**

No. 2010–SC–000749–DG.

Supreme Court of Kentucky.

June 21, 2012.

Rodger Wayne Lofton, Paducah, KY, Counsel for Appellant.

Samuel Scott Marcum, Charles David Walter, Boehl, Stopher & Graves, LLP, Paducah, KY, Counsel for Appellee, Fairmont Specialty Insurance Managers, Inc.

William F.M. Schrock, McMurray & Livingston, PLLC, Paducah, KY, Counsel for Appellee, Denise Maxey.

Delbert Keith Pruitt, Paducah, KY, Counsel for Appellee, Delbert K. Pruitt.

Opinion of the Court by Justice CUNNINGHAM.

Appellant, Rodger W. Lofton, appeals the decision of the Court of Appeals affirming the McCracken Circuit Court's decision awarding Lofton funds to cover calculated expenses from his representation of Appellee, Denise Maxey, in a personal injury case with a contingency fee contract, but refusing his request for attorney's fees based on a *quantum meruit* claim. Lofton argues that the Court of Appeals failed to properly address the grounds for his claim of *quantum meruit*, reiterating that he is entitled to his attorney's fee after a proper withdrawal from representing Maxey. After discretionary

review by this Court, we affirm the Court of Appeals' decision.

On July 15, 2005, Maxey retained Lofton to represent her in a personal injury suit against New Commonwealth Gas Company for damages suffered when she was struck by a company truck on July 23, 2004. Maxey and Lofton executed a written contract under which Maxey agreed to pay court costs and other expenses associated with the litigation and Lofton would be compensated on a contingency fee basis. During pre-trial mediation on February 10, 2006, Maxey was offered $25,000 to settle the case by New Commonwealth's insurance carrier, Fairmont Specialty Insurance Managers, Inc. Lofton counseled Maxey to accept the offer, but she refused. To say that Lofton and Maxey disagreed about the value of the case is to put it mildly. Lofton appraised the value of the case—which apparently turned out to be accurate—at a maximum of $30,000. Maxey, however—with totally unrealistic expectations—insisted that she would not settle for less than $1.2 million. Finding themselves so far apart after extensive discovery and valuation of the case, Lofton determined that, in good conscience, he could not proceed in representing Maxey. Therefore, he moved the circuit court to withdraw as Maxey's counsel a few weeks before the trial. That motion was granted on April 14, 2006.

On May 5, 2006, Lofton filed an attorney's lien in the case file and attached an affidavit outlining the 40.4 hours he had worked on the case. Maxey subsequently obtained other counsel, Delbert K. Pruitt. On May 14, 2007, during another mediation session, Fairmont again offered $25,000 to settle Maxey's claims and this time she accepted the offer. Lofton attempted to draw his attorney's fees from the settlement award by contacting Pruitt on July 6, 2007, but instead Pruitt sent Lofton a check for $3,628.02 as reimbursement for his expenses. Lofton then filed a complaint against Fairmont in the McCracken Circuit Court seeking payment of his attorney's fees related to his representation of Maxey. Fairmont filed a third party complaint against Pruitt and Maxey for indemnification. After a court hearing, the circuit court concluded that Lofton had, in fact, breached his contract with Maxey and was not entitled to recover his attorney's fees. However, the circuit court awarded him expenses in the amount of $3,628.02.

This matter involves the ability to recover attorney's fees based on a contingency fee arrangement when an attorney withdraws from representation of the client for what the lawyer believes is a valid cause. Both parties in this appeal refer to the case of *Baker v. Shapero*, 203 S.W.3d 697 (Ky.2006), wherein this Court stated that an attorney discharged *without* cause under a contingency fee agreement can recover services rendered under a *quantum meruit* basis. The case now before us basically provides us with the flip side of that issue, i.e., whether an attorney can obtain a *quantum meruit* fee when he withdraws for alleged "good cause."

Supreme Court Rule 1.16(b) says:

(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if;

(1) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(2) the client has used the lawyer's services to perpetuate a crime or fraud;

(3) a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent;

(4) the client fails substantially to fulfill on obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(5) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(6) other good cause for withdrawal exists.

█ In this case, the circuit court allowed Lofton to withdraw from his representation of Maxey. Section (b) of SCR 1.16 gives the trial court broad discretion in granting such motions liberally, as long as the client's interests are not affected. Arguably, Lofton's claim to withdraw may have been made under subsections (3), (5) and (6) of that Rule. We do not question the wisdom of Lofton in requesting to withdraw in this case, or the use of the circuit court's discretion in allowing him to do so. However, we find that the "good faith" or "good cause" or a comparable basis for withdrawing as counsel under SCR 1.16(b) does not translate into a comparable justification or "good cause" to be entitled to *quantum meruit* compensation for past services. They are two entirely different standards, with a much lower threshold to withdraw from the case than to withdraw with *quantum meruit* compensation.

The attorney-client relationship is a special arrangement that requires cooperation and open communication in order to preserve the rights and interchange between those involved. While its primary purpose is to prevent external interference, the relationship can be broken down from within. This relationship is based largely on teamwork, cooperation, and communication of each party's goals, expectations, and needs. *See* SCR 1.2, 1.4.

Lofton and Maxey agreed to the terms of their relationship through a written contract. The contract stated that Maxey had the final say in whether to accept a settlement offer or not.[1] When a settlement offer was made, Lofton and Maxey disagreed about whether to accept it. Lofton voluntarily withdrew from representation when Maxey refused the offer. Lofton believed the offer was adequate, while Maxey did not.

█ Before accepting a case, an attorney has the opportunity to investigate the value of a claim and determine whether to advocate the cause. This frequently calls for work to be performed before a formal attorney-client relationship is formed. The work often goes uncompensated. For the attorney, time and effort must be spent in evaluating a possible claim. Once that information is gathered, the attorney has the power to proceed with the case or part ways with the client, fully aware of the risks involved in his representation in a claim or suit. But once the contract is signed, the client is vested with the power to determine the ends of the representation and claim.

█ Lofton was aware of the risks involved in accepting a contingency fee arrangement in this case. He claims that the fundamental disagreement with Maxey over the value of the case was the basis for withdrawing for good cause and, therefore, validates his claim for *quantum meruit.* While the conflict between Lofton and Maxey may have been—in the eyes of Lofton as well as the circuit court—good cause to withdraw from representation, we

---

1. As noted below, SCR 1.2(a) provides: "A lawyer shall abide by a client's decision whether to settle a matter." Thus, Maxey was entitled to final say, regardless of the contract.

disagree that it entitled Lofton to a *quantum meruit* fee.

Prior to our decision in *Baker v. Shapero*, an attorney was able to recover a contingency fee after being discharged without cause. *See LaBach v. Hampton*, 585 S.W.2d 434 (Ky.App.1979). We vacated that principle in deciding *Baker*, stating that an attorney discharged *without cause* under a contingency fee agreement can only recover for services rendered on a *quantum meruit* basis.

In a contingency fee arrangement, a written contract is required. *See* SCR 3.130–1.16(d). An express provision in Lofton's contingency fee contract stated that "no settlement will be made without the consent of the client [Maxey]." SCR 3.130–1.2(a) states in part that

> a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.

Lofton was contractually and ethically bound to accept Maxey's decision to reject the settlement offer. Lofton had the ability to include provisions permitting a voluntary withdrawal, but did not do so.

■ *Quantum meruit* is an equitable remedy invoked to compensate for an unjust act, whether it is harm done to a person after services are rendered, or a benefit is conferred without proper reimbursement. It, therefore, entitles the one who was harmed to be reimbursed the reasonable market value of the services or benefit conferred. BLACK'S LAW DICTIONARY (9th ed. 2009).

■ In *Baker*, this Court stated that "when an attorney employed under a contingency fee contract is discharged without cause before completion of the contract, he or she is entitled to fee recovery on a *quantum meruit* basis only and not on the terms of the contract." 203 S.W.3d at 699. Strictly following *Baker*, for a lawyer to find support for a *quantum meruit* claim, the client must discharge the attorney unjustly. That was not the case here.

A prevailing view is accepted across the nation that permits attorneys to recover remuneration for services rendered under *quantum meruit*, based on a contingency fee contract, even if they withdraw from representation for good cause shown. If the withdrawal is for good (or just) cause, an attorney is able to recover under *quantum meruit*. What is "just cause" or "good cause" to withdraw and still maintain a claim for *quantum meruit* compensation depends on the facts and circumstances of each case. 7A C.J.S. *Attorney & Client* § 360 (2004). The grant of recovery under *quantum meruit* turns on the merits of the reason given for withdrawing from representation.

There are bound to be disagreements between attorneys and clients during the relationship, but such a conflict does not merit termination of the entire relationship. Attorneys and clients do not stand on equal ground in making decisions about the ends or goals of such a relationship. A disagreement with a client over whether to accept a settlement offer is not good and sufficient cause for an attorney to withdraw with expectation of a *quantum meruit* fee. *See* George L. Blum, J.D., *Circumstances Under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal From Case*, 53 A.L.R.5th 287 (1997). Justification for *quantum meruit* was therefore not satisfied, and Lofton forfeited the fee.

We recognize today that *Baker v. Shapero* might be extended, under certain circumstances, to justify *quantum meruit*

compensation to an attorney even with a contingency fee contract. We simply find that a disagreement as to the value of a case does not provide sufficient good cause which rises to that level. We would view the matter differently if the attorney and the client had reached a mutual understanding as to what the settlement goals would be, and then the client later departed from that understanding and adopted a substantially different settlement objective. Here, however, Lofton and Maxey did not discuss in advance of the first mediation their respective settlement objectives.

Also, we are not unmindful of the Court of Appeals' case of *Bradley v. Estate of Lester*, 355 S.W.3d 470 (Ky.App.2011). On the surface, it might appear that that decision supports Lofton's claim. However, upon closer examination, it is markedly distinguishable. In *Bradley*, the attorney represented multiple parties and there was a disagreement concerning a proposed settlement. Some of the parties wished to accept the offer and others did not. The attorney, in essence, was placed in a position of a serious conflict of interest. Furthermore, and significantly, there was no objection in *Bradley* by the former clients that the attorney would receive a fee—it was simply how much. More specifically, the primary issue in that case was whether the former attorney would receive *quantum meruit* for his services or an interest in certain gas leases as he had agreed to under the contingency contract.

We do not venture to delineate today what would constitute "good cause" in withdrawing from representing a client that would justify a *quantum meruit* fee. It would have to be determined on a case-by-case basis. Suffice it to say that the conflict between lawyer and client must rise to a higher level than withdrawing from representation over a disagreement as to settlement.

For all of the above-stated reasons, we hold that Lofton is due nothing more than his reasonable costs and expenses incurred as ordered by the McCracken Circuit Court. Therefore, the decision of the Court of Appeals is affirmed.

All sitting. All concur.

