JOHNSON, JUDGE:
Garmer & Prather, PLLC and St. John & St. John, LLC (collectively "Garmer") appeal from a McCracken Circuit Court order granting Independence Bank's motion for summary judgment. The dispute arises from a wrongful death case that was simultaneously prosecuted in separate federal and state court actions. After the state court case was settled, the federal case was dismissed. Garmer, the attorneys who litigated the federal case, argue that they are entitled to recover fees and expenses from Independence Bank ("Bank"), the Administrator of the decedent's Estate, on a quantum meruit basis. After reviewing the record and the applicable legal authorities, we REVERSE and REMAND to the McCracken Circuit Court.
BACKGROUND
The decedent, Kira Kelley Bryant ("Kira"), was fourteen years of age when she died on June 14, 2011, as the result of a motorcycle accident. Kira was a passenger on the motorcycle, which was driven by Jamison Turney ("Jamison"), her stepfather. Neither Jamison nor Kira was wearing a helmet and Jamison was intoxicated (Jamison later pleaded guilty to second-degree manslaughter and received a sentence of five years.). There was evidence that Kira's mother, Dedra Turney ("Dedra"), knew that Jamison and Kira were riding without helmets and also possibly knew that Jamison was inebriated.
*317 Jamison had borrowed the motorcycle owned by Paducah Nissan LLC, a dealership owned by Dedra's father. Dedra and Jamison were both employed at the dealership.
Following Kira's death, the McCracken District Court appointed Dedra as the Administratrix of Kira's Estate ("Estate") on July 5, 2011. On the same day, Dedra, on behalf of the Estate, filed a complaint against Jamison in McCracken Circuit Court on behalf of the Estate, alleging negligence and seeking compensatory damages. As the McCracken Circuit Court later observed, Dedra's appointment as Administratrix was ill-advised, as she had numerous conflicts of interest due to the fact that potential tort claims existed against her, her husband Jamison, and Paducah Nissan-her employer and her father's business.
On September 6, 2011, Kira's father, Rick Bryant ("Rick"), who resides in Alabama, filed a wrongful death suit in the United States District Court for the Western District of Kentucky against Dedra, Jamison and Paducah Nissan, seeking punitive damages. He brought the suit individually and as a beneficiary of Kira's Estate in order to preserve any claims that Dedra failed to bring in state court. Rick hired Garmer to litigate the suit.
Garmer thereafter diligently pursued the federal lawsuit, locating witnesses, conducting written discovery, taking depositions and retaining expert witnesses. The attorneys paid an investigator to locate two individuals, whom they subsequently deposed, who had witnessed the entire crash sequence and provided the initial assistance at the scene of the accident. They deposed the sales manager, the back-office manager, and three salesmen from the Nissan dealership about Jamison's purchases and consumption of alcohol during work hours. They also took the deposition of the owner of a liquor store where Jamison frequently sent employees to purchase vodka. They retained and paid for an expert economist who calculated Kira's destruction of earning capacity, and a behavioral pharmacologist who testified that Jamison's blood alcohol level was so high at the time of the accident that his intoxication should have been evident to an ordinary person such as Dedra. They also ensured the preservation of the motorcycle and hired a motorcycle mechanic to examine its brake system when it appeared that Jamison would try to attribute the crash to faulty brakes. After Garmer took the deposition of an accident reconstructionist and the results of the motorcycle inspection were revealed, Jamison and Paducah Nissan chose not to contest the cause of the crash.
Meanwhile, on September 16, 2011, Dedra, on behalf of the Estate, filed the first amended complaint in the state action, adding Paducah Nissan, LLC as a defendant and claiming that it had negligently entrusted the motorcycle to Jamison. On November 21, 2012, Paducah Nissan LLC filed a motion for summary judgment against the Estate in both the state and federal cases. Because the Estate had conducted virtually no discovery, Dedra used the discovery conducted by Garmer in the federal lawsuit and attached it to the Estate's response to the motion.
Following the filing of the summary judgment motion in federal court, Garmer amended Rick's complaint to include a claim of negligent entrustment against Paducah Nissan. According to Garmer, the addition of this claim revealed that Paducah Nissan had insurance coverage in the amount of $5 million, whereas it had been assumed that coverage was limited to only $300,000 for Jamison's liability as an employee.
*318 On February 15, 2013, the Estate filed a second amended complaint claiming vicarious liability against Paducah Nissan and a claim for punitive damages. On September 9, 2013, Dedra was removed as Administratrix of the Estate on Rick's petition. The McCracken District Court appointed the Bank as the Administrator of the Estate on September 30, 2013. The Bank initially approached Garmer to represent the Estate, but Garmer refused out of concern for a potential or perceived conflict of interest with his concurrent representation of Rick on his individual claims in the federal case and Rick's claim as a statutory beneficiary of any recovery in the state wrongful death case.
The Bank ultimately hired Moore, Malone & Safreed ("Moore") to represent the estate. Bud Qualk, the Bank's trust officer, executed a contingency fee contract with Moore on November 27, 2013. Moore immediately moved the trial court to substitute the Bank for Dedra as the personal representative of Kira's Estate.
Upon reviewing the case, Moore concluded that the doctrine of respondeat superior and claims of negligent entrustment would not be effective in attributing liability to Paducah Nissan. Its attorneys developed a new theory of negligence based on Paducah Nissan's duty to exercise reasonable care to control its employees while they were acting outside the scope of their employment to prevent them from harming others. This duty included using care to provide regulations to prevent its employees from operating its vehicles while under the influence of alcohol. After consulting with experts, Moore asserted this new basis of liability in a third amended complaint which also asserted a cross-claim against Dedra.
Moore requested and was given access to all of Garmer's work product, evidence, depositions, and files from the federal action. The parties to the state court action agreed by stipulation entered on January 27, 2014, that the depositions of all fact witnesses (but not the expert witnesses) taken in the federal case could be used in the state case. Moore's attorneys interviewed the majority of witnesses previously deposed by Garmer in light of the new theory of the case, directed at the lack of written policy and procedures addressing the use of alcohol and operation of company vehicles at Paducah Nissan.
After Paducah Nissan took the depositions of the experts retained by Moore in connection with this theory, Paducah Nissan's insurer initiated settlement negotiations. Moore negotiated a settlement in the amount of $1.6 million for the Estate. When the settlement was reached, the federal claims, which had been stayed awaiting the outcome of the state case, were dismissed.
Garmer thereafter sent a letter to Moore requesting reimbursement of litigation expenses related to the wrongful death claim expended in the federal case. Garmer also claimed a portion of the attorney's fee, which the Bank, as Administrator of the Estate, agreed to pay to Moore and his firm. The letter stated in part as follows:
The estate benefited from many of the expenses incurred by Garmer & Prather and St. John & St. John firms while we were acting as attorneys for the estate in the federal court action. Dedra Turney and Rick Bryant both benefit from the estate's recovery. Thus, it would be highly inequitable for Rick Bryant to bear those entire costs out of his portion of the recovery. We are happy to discuss the specific way to achieve a more equitable outcome, but it seems that a fair result would be for the estate to reimburse, from its recovery, a portion of those specific expenses which benefited *319 both the estate's claim and Richard Bryant's claim that were incurred before removal of Dedra Bryant as administrator of the estate. That could be achieved by splitting those out-of-pocket expenses equally, or by splitting them on a pro-rata basis in the same ratio as the recovery between the estate and Rick Bryant's loss of consortium claim.... Of course, this would in no way diminish the recovery of expenses you incurred on behalf of the estate after your appearance.
The Estate moved the McCracken Circuit Court for leave to join Rick and Garmer as parties to the lawsuit, and to file an amended complaint seeking a petition for declaration of rights. In its motion, the Estate referenced the claim by the law firms representing Rick in the federal action for reimbursement of attorney's fees and litigation expenses incurred in that suit, and their assertion of a claim based on quantum meruit for the Estate to pay them a portion of the attorney's fee and litigation expenses it had agreed to pay to Moore for service rendered in the investigation, prosecution, and settlement of the claims against Dedra, Jamison and Paducah Nissan.
The trial court granted the motion to file the amended complaint and join the parties. After the pleadings were filed, the Estate moved for summary judgment on its petition for declaration of rights against Rick and Garmer. The trial court granted summary judgment to the Estate on the issue of Garmer's attorney's fees after determining that the theories of quantum meruit and unjust enrichment were not available as a matter of law. This appeal followed.
STANDARD OF REVIEW
Kentucky Rules of Civil Procedure (CR) 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991) (internal quotation marks and citation omitted). "While the Court in Steelvest used the word 'impossible' in describing the strict standard for summary judgment, the Supreme Court later stated that that word was 'used in a practical sense, not in an absolute sense.' " Lewis v. B & R Corp. , 56 S.W.3d 432, 436 (Ky. App. 2001) (quoting Perkins v. Hausladen , 828 S.W.2d 652, 654 (Ky. 1992) ). "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are involved." Coomer v. CSX Transp., Inc. , 319 S.W.3d 366, 370-71 (Ky. 2010) (quoting Hallahan v. The Courier-Journal , 138 S.W.3d 699, 705 (Ky. App. 2004) ).
ANALYSIS
Quantum meruit is defined as:
an equitable remedy invoked to compensate for an unjust act, whether it is harm done to a person after services are rendered, or a benefit is conferred without proper reimbursement. It, therefore, entitles the one who was harmed to be reimbursed the reasonable market value of the services or benefit conferred.
Lofton v. Fairmont Specialty Ins. Managers, Inc. , 367 S.W.3d 593, 597 (Ky. 2012) (citing BLACK'S LAW DICTIONARY (9th ed. 2009)).
The four elements necessary to state a claim for quantum meruit recovery are:
*320 1. that valuable services were rendered, or materials furnished;
2. to the person from whom recovery is sought;
3. which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and
4. under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person.
Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n, Inc. , 242 S.W.3d 359, 366 (Ky. App. 2007) (quoting 66 Am.Jur.2d Restitution and Implied Contracts § 38 (2001) ). The general rule is that "quantum meruit is available where the parties understand and intend that compensation is to be paid." Id. at 367 (citing Cherokee Oil Co. Ltd. v. Union Oil Co. of California , 706 F.Supp. 826, 830 (M.D. Fla. 1989) ).
In granting summary judgment to the Estate, the trial court ruled that quantum meruit and unjust enrichment were not available to Garmer as a matter of law, in reliance on "[t]he general rule in this state ... that an attorney cannot recover fees for his services from one who has not employed him or authorized his employment, although the services may have been beneficial to such person." O'Doherty & Yonts v. Bickel , 166 Ky. 708, 179 S.W. 848, 849 (1915). The trial court found that the Bank, as Administrator to the Estate, never contracted to pay Rick's attorney's fees, nor authorized his attorneys to represent the Estate in federal court. Further, Garmer represented Rick solely in the federal case, never represented the Estate in the state litigation nor paid any of the costs incurred by the Estate. The trial court acknowledged that Garmer's efforts were beneficial to Rick in the federal case and later were beneficial to the Estate in the state case, but concluded that it had no authority to void the attorney-client contract between the Estate and its attorneys. It further held that the theory of unjust enrichment could not be used to void that contract because the Estate's attorneys retained nothing inequitably.
Garmer contends that the trial court erred because quantum meruit recovery of attorney's fees is available in the absence of an enforceable contractual agreement, under the express qualification to the general rule which provides that "the acceptance of or acquiescence in the services rendered may raise an implied promise to pay therefor." Id. Garmer argues the Estate knowingly and eagerly received and accepted its work product, moved to incorporate it into its own case and used that work product for its own benefit to move quickly to settlement. According to Garmer, if it had not been for its efforts in the federal litigation, the Estate's claims in state court against Paducah Nissan and Dedra, and the claim for punitive damages against Jamison, would have been barred by the statute of limitations. See Kentucky Revised Statutes (KRS) 413.180 (requiring an action for wrongful death to be brought within one year of the qualification of the personal representative).
Had there been a contract between Garmer and the Estate, Garmer would not have needed to invoke the doctrine of quantum meruit. As a matter of law, the circuit court erred in not applying the four-pronged test for quantum meruit and in not considering whether the Bank, as Administrator of the Estate, had accepted or acquiesced in the services provided by Garmer and thereby made an implied promise to pay.
The Estate responds that it had no choice but to avail itself of the efforts made by Garmer because at the time it was appointed Administrator of the Estate *321 it had less than seven months to prepare for trial in the state court action. Under these circumstances, it contends, its reliance on Garmer's prior work product did not constitute acquiescence because:
the acquiescence which would raise an implied promise must be such as presumes volition upon the part of the person sought to be charged with the duty of compensating the attorney. It will not do to say that, where the circumstances are such that one has no choice but to avail himself of efforts which have been made by an attorney, this would constitute acquiescence.
O'Doherty, 179 S.W. at 849-50. Acquiescence:
may supply the place of a request to act, provided the case is such that the client might reasonably know that he would be expected to pay for the work; and the same would be true if the client by his acts induced the attorney to believe that his services were desired.
Id. at 849 (internal citation omitted). It should be noted that there is no proof that Garmer placed the Estate in the position it found itself in when the Estate only had seven months to prepare for trial. Whether seven months constituted an insufficient time to prepare for trial, and whether the Bank had no choice but to avail itself of Garmer's work is a genuine issue of material fact that precludes summary judgment.
Similarly, the Bank was aware of Garmer's efforts in the federal lawsuit, as evidenced by Bud Qualk, the Bank's Trust Officer, approaching Garmer to represent the Estate in the state wrongful death and personal injury claims. Garmer ultimately refused the representation request on the grounds of a conflict of interest, but a question of fact remains regarding whether the Bank subsequently accepted Garmer's services under such circumstances that would reasonably have notified the Bank that Garmer expected to be paid. The understanding between Garmer and the Bank appears to have progressed considerably before Garmer's decision not to undertake the representation, as evidenced by a letter in the record to the Bank from the Bryant Law Center P.S.C. ("Bryant"), dated November 15, 2013. According to the letter, Bryant was retained by the Bank to serve as co-counsel for the Estate with Garmer. The letter states:
The proposed agreement of representation, to our understanding, was that Garmer & Prather, PLLC and the Bryant Law Center, PSC would both serve as counsel for the personal representative of the estate (Independence Bank) in pursuit of claims for wrongful death. The total fee would be forty percent (40%) of the recovery for wrongful death. Garmer & Prather, PLLC and Bryant Law Center, PSC would split that fee in accordance with Kentucky's Rule of Professional Conduct. Garmer & Prather, PLLC, also represents the natural father, Richard Bryant.
The letter then explains that Bryant had decided to withdraw on the basis of conflicts of interest arising from co-counseling a parent with claims against the other parent paired with a wrongful death claim. The letter concludes by stating, "[w]e understand that you have an agreement with Garmer & Prather, PLLC. As such, you should seek the advice of counsel as how to proceed." The letter creates a genuine issue of material fact concerning the Bank's relationship with Garmer, specifically, the extent to which the Bank may have been on notice that Garmer expected to be paid and to what extent, if any, the Bank acquiesced in subsequently accepting Garmer's services. Garmer recognized that a conflict of interest on personal representation *322 would not preclude it from allowing the Estate access to its work product.
CONCLUSION
Based upon the foregoing, we REVERSE the circuit court's granting of summary judgment to the Estate and REMAND the case for trial based upon application of the proper quantum meruit standard.
ALL CONCUR.